

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MERCEDES-BENZ USA, LLC,                )
                                       )
                    Plaintiff,         )
                                       )
v.                                     )      Case No. 1:23-cv-02281
                                       )
JP MOTORS, INC.,                       )      Honorable Mary M. Rowland
                                       )
                    Defendant.         )      Magistrate Judge M. David Weisman

**DEFENDANT JP MOTORS, INC.'S MEMORANDUM
OF LAW IN SUPPORT OF ITS MOTION TO DISMISS OR STAY**

Defendant, JP Motors, Inc. ("JP Motors"), submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff's, Mercedes-Benz USA, LLC ("MBUSA"), Complaint for Injunctive and Declaratory Relief ("Complaint") under Federal Rule of Civil Procedure 12(b)(1).

**I.**

**INTRODUCTION**

Under the *Burford* abstention doctrine, federal courts are to dismiss actions where a state has a unified scheme for review of its administrative orders, and federal judicial review would have a disruptive effect on the state's efforts to establish a coherent policy on a matter of substantial state concern. *See Property & Casualty Ins. Ltd. v. Cen. Nat'l Ins. Co. of Omaha*, 936 F.2d 319, 322 (7th Cir. 1991). Such is the case here, where JP Motors filed a protest (the "Protest," attached as **Exhibit 1**) against MBUSA with the Illinois Motor Vehicle Review Board (the "Board").

The Board was specifically created by the Illinois legislature as part of the Illinois Motor Vehicle Franchise Act (the "Act"). 815 ILCS 710/16. The purpose of the Act is to regulate motor vehicle dealers and manufacturers conducting business in Illinois based upon the legislature's declaration that "the distribution and sale of vehicles within this State *vitally* affects the general

economy of the State and the public interest and welfare . . ." 815 ILCS 710/1.1 (emphasis added). The Board is comprised of seven members appointed by the Illinois Secretary of State who "shall represent the public interest at large." 815 ILCS 710/16. The Board shall have the power "to conduct hearings, by or through its duly authorized administrative hearing officer, on protests filed under Sections 4, 5, 6, 7, 9, 10.1, 11 and 12" of the Act. 815 ILCS 710/18[1]. JP Motors filed its Protest under Section 7 ("Unreasonable Dealer or Franchise Restrictions"), Section 4(b) ("arbitrary, bad faith or unconscionable" conduct by a manufacturer), Section 4(e)(6) (to prevent or attempt to prevent the transfer of ownership interest), Section 4(e)(11) (to prevent or refuse to approve a proposal to establish a successor), and Section 4(e)(14) (to exercise a right of first refusal) of the Act concerning MBUSA's refusal to approve JP Motors' assets sale to Laspo Motors, LLC ("Laspo Motors"). The Act designates the Board as the initial place to which disputes are taken. *Nissan North America, Inc. v. Jim M'Lady Oldsmobile, Inc.*, No. 07 C 6304, 2008 U.S. Dist. LEXIS 84700, at *11 (N.D. Ill. Aug. 29, 2008).

MBUSA has not contended, nor could it, that the Board lacks jurisdiction to address the dispute in this case, nor that its right of first refusal is not subject to the Board's coherent policy on a substantial state concern. Indeed, MBUSA contends that this is purely a contractual dispute (Complaint, ¶¶ 40, 45 (both claims are based on the parties' contract)), but it necessarily involves the application of "vital" Illinois law embedded into the contract at issue, including with respect to rights of first refusal. *Compare* Complaint, ¶ 14 (citing the Act), *with* 815 ILCS 710/8 (the Act applies to all dealer-franchise agreements in Illinois); 815 ILCS 710/4(e)(14). Regardless, there can be no disagreement that the threshold question is whether this Court's review of this dispute

---

[1] The Board's powers include "advis[ing] the Secretary of State upon appointments," and "advis[ing] the Secretary of State on legislation proposed to amend this Act or any related Act." 815 ILCS 710/18(a)-(d). The Board does not, however, have certain traditional court powers, including the power to award damages, the power to conduct jury trials, or the power to enforce subpoenas through contempt power.

will have a disruptive effect on Illinois' efforts to establish a coherent policy on a matter of "vital" state concern. It will. Accordingly, this cause should be dismissed under the *Burford* abstention doctrine or, alternatively, stayed under the *Colorado River* doctrine.

## II.

## ARGUMENT

### A.     The *Burford* Abstention Doctrine Requires Dismissal.

This Court should dismiss MBUSA's Complaint under the *Burford* abstention doctrine. Like the ripeness and exhaustion of remedies doctrines, the *Burford* abstention doctrine requires federal courts to dismiss actions where a state has a unified scheme for review of its administrative orders, and federal judicial review would have a disruptive effect on the state's efforts to establish a coherent policy on a matter of substantial state concern. *See Property & Casualty Ins.*, 936 F.2d at 322.

Factors to consider under *Burford* include: (1) the presence of a complex and important issue of traditional state concern; (2) the creation of a specialized state agency and the consequent superior competence of state tribunals; (3) the possibility of disruption to the state's administrative scheme by the exercise of federal judicial review; and (4) the need for coherent state doctrine in the area. *See Adams v. Attorney Registration & Disciplinary Comm'n of Supreme Court*, 600 F. Supp. 390, 396 (N.D. Ill. 1984) *aff'd on other grounds*, 801 F.2d 968 (7th Cir. 1986).

Here, the above factors mandate dismissal under *Burford*. As articulated by the Illinois Legislature, the Act is intended to address a "complex and important state concern" in need of a "coherent state doctrine" (factors 1 and 4) – the "distribution and sale of vehicles within this State *vitally* affects the general economy of the State and the public interest and welfare, and that in

order to promote the public interest and welfare, and in the exercise of its police powers, it is

necessary to regulate motor vehicle [franchises]." 815 ILCS 710/1.1 (emphasis added); *see also*

*Yamaha Motor Corp. U.S.A. v. Stroud*, 179 F.3d 598, 602-03 (8th Cir. 1999) (affirming abstention,

the Eighth Circuit held that based on the Arkansas Motor Vehicle Franchise Act, the state has "an

interest in regulating the motor vehicle sales industry").

To protect this important state concern and enforce the Act, the Illinois Legislature created

the Board (factors 2 and 3) via 815 ILCS 710/16-18, and gave the power to review the Board's

"final decisions" to the Illinois Circuit Courts of Cook County and Sangamon County. 815 ILCS

710/31. The Act specifically vests the Board with the power to hear protests under Sections 4 and

7 of the Act – which controls JP Motors' Protest *and MBUSA's Complaint*. 815 ILCS 710/18.

Indeed, when interpreting the Act, this Court must give deference to the Board's interpretation of

the Act. *See GMC v. State Motor Vehicle Review Board*, 862 N.E.2d 209, 219 (2007).

As a result, if this Court grants the relief requested in MBUSA's Complaint before the

Board resolves JP Motors' Protest, this Court will unduly disrupt the important state concern

(factor 3) protected by the Act, which provides for judicial review only after the Board issues a

final decision. 815 ILCS 710/31. This Court should therefore dismiss this action under the *Burford*

abstention doctrine, which requires dismissal rather than a stay. *See United States v. Riverside*

*Lab., Inc.*, 678 F. Supp. 1352, 1361 (N.D. Ill. 1988).

Courts in this district have done so under circumstances nearly identical to the case at bar.

For example, in *Nissan North America, Inc. v. Jim M'Lady Oldsmobile, Inc.*, the Northern District

of Illinois dismissed a manufacturer's federal complaint under *Burford*, holding that the Act is

evidence by the Illinois legislature to establish a coherent policy with respect to a matter of

substantial public concern, and that the state offers a "special" forum to litigate this type of claim.

4

No. 07 C 6304, 2008 U.S. Dist. LEXIS 84700, at *10-11, 20 (N.D. Ill. Aug. 29, 2008). In so holding, the *M'Lady* court noted that while courts in this district have declined to follow *Burford* in this type of case, those cases were filed before the Board's role was expanded in 1995. *Id.* at *20 (collecting cases), fn. 9 (detailing the Board's expansion). Like *M'Lady*, this is precisely the type of case where *Burford* should be followed.

### B. Alternatively, *Colorado River* Abstention Doctrine Requires That This Court Stay This Action.

In the event that this Court does not dismiss MBUSA's Complaint, which it should, it should nevertheless stay this action under the *Colorado River* abstention doctrine. Under *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813 (1976), a federal court will abstain from exercising jurisdiction if: (1) there are "parallel proceedings" in state and federal tribunals; and (2) "exceptional circumstances" warranting abstention exist. *Tyrer v. City of South Beloit,* 456 F.3d 744, 751 (7th Cir. 2006).

The purpose of abstention under *Colorado River* is to avoid "a grand waste of the efforts of both the courts and the parties" by having two courts decide the same issues. *Riverside Lab., Inc.*, 678 F. Supp. at 1358. Therefore, "[t]o be parallel, it is not necessary that there be formal symmetry between the two actions." *Tyrer,* 456 F.3d at 752. Rather, state and federal proceedings are parallel **"if substantially the same parties are litigating substantially the same issues simultaneous in two fora."** *Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc.*, 180 F.3d 896, 898 (7th Cir. 1999) (emphasis added). To determine whether the actions are "parallel," courts look at the "central issues" in both actions, *id.*, and whether the same law and/or evidence controls the two actions. *Tyrer,* 456 F.3d at 752. For purposes of abstention, state "administrative proceedings that declare and enforce liabilities" constitute a parallel state proceeding. *See Yamaha*

*Motor Corp. U.S.A.*, 179 F.3d at 602 (a proceeding before the Arkansas motor vehicle review board).

Here, the Protest currently pending before the Illinois Board and MBUSA's Complaint both: (1) require an interpretation and application of the parties' rights and liabilities under the same sections of the Act; and (2) hinge on the same set of operative facts. Accordingly, this Court should find that the Protest and the Complaint are parallel proceedings and examine the exceptional circumstances surrounding this case.

The Seventh Circuit has set forth the following ten factors to determine if "exceptional circumstances" exist:

> 1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim.

*Tyrer,* 456 F.3d at 754. However, courts must remember that "no single factor is determinative." *Id.*

Applying the above 10 factors here, factors 3, 4, 5, 6, 7, and 10 support abstention under *Colorado River,* while the remaining factors (1, 2, 8, and 9) are not applicable. Because the same issues under the Act are before the Board and this Court, a decision by the Board will negate this Court having to decide these issues (factor 3). The Board had jurisdiction before MBUSA filed this action (factor 4). This action only pertains to legal issues under the Act and does not involve any federal legal issues (factor 5). The Act provides an adequate forum to protect MBUSA's rights and permits it to appeal the Board's final decision (factor 6). The legal and factual issues raised in the Complaint are currently before the Board by virtue of JP Motors' Protest (factor 7).

6

MBUSA filed the Complaint knowing that such forum is not proper and subject to a viable motion to dismiss and would ultimately delay the transaction between the parties (factor 10).

Accordingly, if this Court does not dismiss this action pursuant to the *Burford* abstention doctrine, it should stay this action under the *Colorado River* abstention doctrine until the Board has had an opportunity to make a final ruling on the issues currently before this Court.

## III.

## CONCLUSION

For the reasons above, Defendant, JP Motors, Inc., respectfully requests that this Court dismiss Plaintiff's, Mercedes-Benz USA, LLC, Complaint for Injunctive and Declaratory Relief, or, in the alternative, stay this matter until the Illinois Motor Vehicle Review Board resolves JP Motors' Protest under the Illinois Motor Vehicle Franchise Act.

Dated: April 18, 2023

Respectfully submitted,

**JP MOTORS, INC.**

By:＿＿ /s/ Mark M. Lyman＿＿＿＿＿＿
One of Its Attorneys

Mark M. Lyman
Steve M. Varhola
LYMAN LAW FIRM, LLC
227 West Monroe Street, Suite 2650
Chicago, IL 60606
(312) 762-9524
mark@lymanlawus.com
steve@lymanlawus.com

# **EXHIBIT 1**

# NOTICE OF PROTEST
# ILLINOIS MOTOR VEHICLE FRANCHISE ACT



**Office of the**
**Secretary of State**
**DEPARTMENT OF**
**ADMINISTRATIVE HEARINGS**
200 Howlett Bldg.          17 N. State, Ste. 1200,
Springfield, IL 62756      Chicago, IL 60602
217-782-3296
www.cyberdriveillinois.com

| Protesting Dealer/Franchisee | Illinois Dealer License Number |
|---|---|
| JP Motors, Inc. | DL 421 |
| Street Address | City, State, ZIP |
| 3675 Frontage Road | Peru, Illinois 61354 |
| Telephone Number | |
| ( 815 ) 228-7000 | |
| Manufacturer/Distributor | |
| Mercedes-Benz USA, LLC | |
| Street Address | City, State, ZIP |
| One Mercedes Drive | Sandy Springs, GA 30328 |
| Date notified by manufacturer of proposed action: | Date of current franchise/service agreement: |
| April 12, 2023 | January 1, 2012 |

A hearing request under Sections 12 and 29 of the MVFA before the Motor Vehicle Review Board is hereby made alleging violations of the following Sections of the MVFA, which are the only violations authorized to be heard by the board (mark those applicable):

☑ § 4 _(b), (e)(6), (e)(11), and (e)(14)_          (Please specify sub-part(s))

☐ § 5    ☐ § 6    ☑ § 7    ☐ § 8    ☐ § 9    ☐ § 10.1    ☐ § 11

Attached to this notice are the following documents/information:

**RECEIVED**

1. Brief description of the facts supporting the alleged violations;

APR 1 4 2023

2. Copy of all documents received from and sent to the manufacturer/distributor and any other dealer/franchisee involved, relevant to this notice of protest;

SECRETARY OF STATE
ADMINISTRATIVE HEARINGS DEPT.
CHICAGO

3. Name and address of any other dealer/franchisee involved.

_Mark M. Lyman_                                    4-14-2023
Signature/Title of Dealer or Attorney                Date

Attorney Name/Address:  Mark M. Lyman, Lyman Law Firm, LLC

227 West Monroe Street, Suite 2650

Chicago, Illinois 60601

**The original and four copies** of this notice with attachments must be submitted by mail or delivered to Illinois Secretary of State, Rm. 200, Howlett Bldg., Springfield, IL, 62756; delivered to Secretary of State, Rm. 1200, 17 N. State, Chicago, IL, 60602; or faxed to the Springfield office at 217-782-2192.

Printed by authority of the State of Illinois. February 2007 — DAH A-17.1

## FACTS SUPPORTING VIOLATION

Complainant, JP Motors, Inc. ("JP Motors"), is a duly licensed motor vehicle dealer in Peru, Illinois, and owns and operates Mercedes-Benz, Chevrolet and Nissan ("Dealership Franchises") dealerships in a single dealership facility located at 3675-3701 Frontage Road, Peru, Illinois 61354 ("Dealership Facility"). Pictures of the Dealership Facility are attached as **Group Exhibit 1**. The Dealership Facility was constructed more than 40 years ago as a multi-franchise dealership. All of the Dealership Franchises have been operating at the Dealership Facility for approximately 31 years. JP Motors has been the Mercedes-Benz, USA, LLC ("MBUSA") dealer at the Dealership Facility for approximately 25 years and currently operates pursuant to a Mercedes-Benz Passenger Car Dealer Agreement and a Mercedes-Benz Light Truck Dealer Agreement, each dated January 1, 2012 ("MB Dealer Agreements").

While there are some separate retail entrances and other interior separations, much of the dealership facilities are contiguous, open and shared by the various Dealership Franchises. Further, service technicians work on different vehicle brands and the service area, parts storage area and offices are shared and intertwined. Dealer personnel, including retail and support staff, are shared or have duties that serve all of the Dealership Franchises permitting the dealer to share expenses at a significant savings, which would be lost if the Dealership Franchises were operated independently.

The dealerships being operated at the Dealership Facility are known in the industry as a "dual" facility since they contain more than one line-make. Dual facilities are particularly suitable for downstate markets, like Peru, where demand and volume for a particular brand may not support a single, exclusive dealership facility. JP Motors does not have an agreement with any of the manufacturers to operate its Dealership Franchises in separate facilities or to keep the Dealership Facility exclusive to any specific line-make.

1

On February 1, 2023, JP Motors entered into an Asset Purchase Agreement ("APA") with Laspo Motors, LLC, an Illinois limited liability company ("Buyer"), to acquire its Mercedes-Benz, Chevrolet, and Nissan assets at the Dealership Facility. Commencing on February 15, 2023 and continuing to the present, Buyer submitted to MBUSA, which MBUSA accepted, information and documentation requested and required by it to process Buyer's dealer application. The APA provided a single purchase price for all of the Dealership Franchises. The APA also requires the Buyer to purchase the Dealership Facility pursuant to a Real Estate Purchase and Sale Agreement with one unallocated purchase price.

On February 1, 2023, the APA was submitted to MBUSA for approval. On February 8, 2023 and again on March 28, 2023, MBUSA sent letters requesting an allocation of the purchase price under the APA related to JP Motors' Mercedes-Benz franchise so that MBUSA could evaluate whether to exercise its right of first refusal. **Group Exhibit 2.** MBUSA claimed that such an allocation was required by Section IX.B. of the MB Dealer Agreements. However, Section IX.B. of the MB Dealer Agreements does not address or require the allocation of purchase prices or goodwill in an asset purchase agreement. **Exhibit 3,** at Section IX.B. On April 3, 2023, counsel for JP Motors responded to MBUSA's request for an allocation noting that the APA purchase price was negotiated as a single unallocated amount with consideration being given to the ability to continue to operate all of the brands at the Dealership Facility. It was noted that the Dealership Franchises and the Dealership Facility were being purchased together, as a single going concern, and not separately so that the purchaser could share certain costs and enjoy the economies of scale. **Exhibit 4.**

MBUSA is the *only* manufacturer of the three line-makes to insist that an allocation of the purchase price in the APA be made. MBUSA's refusal to proceed with the approval process of

2

the Buyer's application has delayed the transaction and resulted in losses and damages to JP

Motors.

In response to JP Motors' letter advising that an allocation of the APA purchase price was

not required or possible given the nature of the transaction, MBUSA, with the clear attempt to

avoid the Illinois Motor Vehicle Review Board ("Board") deciding this dispute under the IMVFA

(defined below) and to halt processing Buyer's application any further, filed an action in the United

States District Court for the Eastern District of Illinois (*Mercedes–Benz USA v. JP Motors, Inc.*,

Case No. 1:23-cv-02281) alleging that JP Motors had materially breached the MB Dealer

Agreements by not allocating the purchase price in the APA. (Complaint was filed under seal).

This dispute involves the interpretation and application of a statute, the IMVFA (defined below),

that is squarely within this Board's jurisdiction, and should be determined by the Board in the first

instance. *See Nissan North America, Inc. v. Jim M'Lady Oldsmobile, Inc.*, No. 07 C 6304, 2008

U.S. Dist. LEXIS 84700, at *9 (N.D. Ill. Aug. 29, 2008) (applying *Burford* abstention to federal

action that involved the same issue as action pending before the MVRB); *see also Lou Bachrodt

Chevrolet Co. v. GM LLC*, No. 12 C 7998, 2013 U.S. Dist. LEXIS 98870, at *15 (N.D. Ill. July

15, 2013) (remanding action to the MVRB after holding that state interest in interpretation of

IMVFA "substantially outweighed" federal interest in diversity jurisdiction).

## APPLICABLE STATUTES

JP Motors is an Illinois motor vehicle dealer. MBUSA is an Illinois franchiser. JP Motors

is a franchise subject to the Illinois Motor Vehicle Franchise Act ("IMVFA").

Section 4 of the IMVFA prohibits certain unfair practices by motor vehicle franchisers.

Among them, **Section 4(e)(6) of the IMVFA** makes it unlawful for a manufacturer:

> to refuse to give effect to or prevent or attempt to prevent by contract or otherwise
> any motor vehicle dealer or any officer, partner or stockholder of any motor vehicle

3

dealer from selling or transferring any part of the interest of any of them to any other person or persons or party or parties unless such sale or transfer is to a transferee who would not otherwise qualify for a new motor vehicle dealers license under the Illinois Vehicle Code² or unless the franchiser, having the burden of proof, proves that such sale or transfer is to a person or party who is not of good moral character or does not meet the franchiser's existing and reasonable capital standards and, with consideration given to the volume of sales and service of the dealership, uniformly applied minimum business experience standards in the market area.

Section 4(e)(11) of the IMVFA makes it unlawful for a manufacturer:

to prevent or refuse to approve a proposal to establish a successor franchise at a location previously approved by the franchiser when submitted with the voluntary termination by the existing franchisee unless the successor franchisee would not otherwise qualify for a new motor vehicle dealer's license under the Illinois Vehicle Code or unless the franchiser, having the burden of proof, proves that such proposed successor is not of good moral character or does not meet the franchiser's existing and reasonable capital standards and, with consideration given to the volume of sales and service of the dealership, uniformly applied minimum business experience standards in the market area.

Section 4(e)(14) of the IMVFA makes it unlawful for a manufacturer:

(14) to exercise a right of first refusal or other right to acquire a franchise from a dealer, unless the manufacturer . . . :

(B) pays to the dealer the same or greater consideration as the dealer has contracted to receive in connection with the proposed transfer or sale of all or substantially all of the dealership assets, stock, or other ownership interest, including the purchase or lease of all real property, leasehold, or improvements related to the transfer or sale of the dealership. Upon exercise of the right of first refusal or such other right, the manufacturer or distributor shall have the right to assign the lease or to convey the real property;

(C) assumes all of the duties, obligations, and liabilities contained in the agreements that were to be assumed by the proposed transferee and with respect to which the manufacturer or distributor exercised the right of first refusal or other right to acquire the franchise;

Section 7 of the IMVFA makes it unlawful for a manufacturer:

directly or indirectly to impose unreasonable restrictions on the motor vehicle dealer or franchisee relative to transfer, sale, right to renew, termination, discipline, noncompetition covenants, site-control (whether by sublease, collateral pledge of lease, or otherwise), right of first refusal to purchase, option to purchase, compliance with subjective standards and assertion of legal or equitable rights.

4

Finally, **Section 4(b) of the IMVFA** provides:

> It shall be deemed a violation for any manufacturer, factory branch, factory representative, distributor or wholesaler, distributor branch, distributor representative or motor vehicle dealer to engage in any action with respect to a franchise which is arbitrary, in bad faith or unconscionable and which causes damage to any of the parties or to the public.

## STATUTORY VIOLATIONS

Under Section 4(e)(14) and the other above-cited provisions of the IMVFA, a motor vehicle manufacturer's right of first refusal is not absolute. In fact, it violates Illinois law *unless* the manufacturer is in a position to step into the shoes of the purchaser and take the entire deal as it comes to the manufacturer, including all of the buyer's other obligations under the APA and the related real estate. If the manufacturer cannot do so, then it cannot exercise a lawful right of first refusal over the franchised assets, regardless of what the franchise agreement states. The IMVFA is just as applicable to rights of first refusals as it is to any other issue covered by the written franchise agreement, including terminations, relocations, dealer successions, and warranty procedures. All of these matters are subject to the IMVFA, which the Illinois General Assembly intended to protect Illinois dealers from harmful franchising practices, such as those here.

MBUSA's refusal to proceed with processing the Buyer's dealer application and MBUSA's insistence that the parties rewrite their agreement (i.e., allocate the purchase price) to facilitate a purported right of first refusal, violates the IMVFA in several respects. MBUSA's actions, if validly exercised, would effectively undual JP Motor's dealership, which has operated in its present form and location for decades, devalue its other dealership assets, jeopardize the sale to the Buyer, and threaten the viability of JP Motors' remaining dealership operations, its investment in its facility, and the jobs of its employees.

*First,* MBUSA's refusal to continue to process the Buyer's dealer application, which is delaying the sale of JP Motor's franchises, is done without good cause and violates Section 4(e)(6),

5

or alternatively, Section 4(e)(11). It also constitutes an unreasonable restriction relative to the sale of JP Motors' dealership.

*Second*, MBUSA's demand that the parties allocate the purchase price, which is apparently tied to a premise that MBUSA could exercise a right of first refusal for less than all of the assets that JP Motors is selling to Buyer, violates Section 4(e)(14), which contains no requirement that a purchase price be allocated, much less that a manufacturer could refuse to accept the transaction as presented, or exercise a right of first refusal for less than all of the assets being conveyed. Such a requirement also constitutes an unreasonable restriction relative to JP Motors' right to sell its dealership in violation of Section 7.

*Third*, even assuming, arguendo, that MBUSA has a right of first refusal under the MB Dealer Agreements for these transactions, there is nothing therein that requires JP Motors to allocate a purchase price or otherwise alter the agreement that JP Motors entered into with the Buyer. Thus, putting aside how Section 4(e)(14) limits MBUSA's contractual rights, MBUSA is actually attempting to assert contractual rights that it does not have, resulting in harm and damages to JP Motors. MBUSA's violations of the IMVFA by asserting contract rights that it does not have under the MB Dealer Agreements and taking steps to try to frustrate the transactions in the APA are egregious, done in bad faith, and violates Section 4(b).

Accordingly, JP Motors, Inc. requests a hearing on its protest, a declaration that Mercedes-Benz USA, LLC has violated Sections 4(e)(6), 4(e)(11), 4(e)(14), 7 and 4(b) of the IMVFA, and an order requiring Mercedes-Benz USA, LLC to approve the sale from JP Motors to the Buyer. In addition, pursuant to Section 13 of the IMVFA, Complainant seeks an award of its attorneys' fees, experts' fees, and costs. 815 ILCS 710/13.

# GROUP EXHIBIT 1

4/13/23, 5:41 AM
JP Motors - Google Maps

Google Maps    JP Motors



Imagery ©2023 CNES / Airbus, Maxar Technologies, U.S. Geological Survey, USDA/FPAC/GEO, Map data ©2023    100 ft

4/13/23, 5:52 AM                                    3537 Frontage Rd - Google Maps

Google Maps    3537 Frontage Rd



Peru, Illinois

Google Street View

May 2018    See more dates

Image capture: May 2018    © 2023 Google



36th St    JP Ct

Planet Fitness    Shern

4/13/23, 5:45 AM                                            3537 Frontage Rd - Google Maps

Goᴏgle Maps    3537 Frontage Rd



Peru, Illinois
Google Street View
May 2018    See more dates



Image capture May 2018    © 2023 Google



JP Motors

26th St

# GROUP EXHIBIT 2

Mercedes-Benz USA, LLC

**VIA ELECTRONIC DELIVERY**

February 8, 2023

Joseph M. Leydon
JP Motors, Inc.
3675 Frontage Road
Peru, IL 61354
lynnjp@aol.com

RE: LETTER REQUESTING APPORTIONMENT

Dear Mr. Leyden:

We are writing on behalf of Mercedes-Benz USA, LLC ("**MBUSA**") regarding the proposed transfer of ownership interests in its MBUSA dealership assets between JP Motors, Inc. ("**Dealer**") and LASPO Motors, LLC ("**Proposed Buyer**"), as set forth in the Asset Purchase Agreement dated February 1, 2023 (the "**APA**"). We would like to address time-sensitive issues relating to the APA.

As you know, the APA not only provides for the purchase and sale of certain assets used in Dealer's Mercedes-Benz operations, but also provides for the purchase and sale of other assets used in Dealer's other line-make operations, including its separate Chevrolet and Nissan businesses. The APA provides that the goodwill for all Dealer's line-make operations is ▋▋▋▋▋▋▋ but does not apportion or segregate the part of the proposed transaction that only constitutes the Mercedes-Benz brand.

Under Section IX.B. of the Mercedes-Benz Passenger Car and Light Truck Dealer Agreements, dated January 1, 2012 (collectively, the "**Dealer Agreements**") and 815 ILL. COMP. STAT. 710/4(e)(6)(A) (the "**Statute**"), MBUSA has a right of first refusal in connection with the MBUSA Transfer. However, MBUSA cannot evaluate or exercise its contractual and statutory rights of first refusal without the APA being apportioned in a manner that specifically describes the terms of the proposed Transfer. Dealer's submission of the APA without any such apportionment, therefore, is a material breach of the Dealer Agreements and a violation of the Statute.

For this reason, we request that Dealer provide (i) a good faith breakdown of the purchase price payable under the APA that is attributable to the MBUSA Transfer, and (ii) a good faith breakdown of the other terms of the APA that are attributable to the MBUSA Transfer. Alternatively, in the event that Dealer is either unable or unwilling to provide such information in compliance with the Dealer Agreements and the Statute, we request that Dealer withdraw the APA.

Alternatively, in the event that the Dealer is either unable or unwilling to provide such information in compliance with the Dealer Agreements and the Statute, we request that Dealer withdraw the APA.

We also request that Dealer, pursuant to the Statute, provide an accounting of the reasonable, actual expenses incurred to date by the Proposed Buyer in negotiating and implementing the MBUSA Transfer. Such reasonable expenses may include attorneys' fees, which do not exceed the usual, customary, and reasonable fees charged for similar work done for other clients.

Mercedes-Benz USA, LLC

**VIA ELECTRONIC DELIVERY**

February 8, 2023

Joseph M. Leydon
JP Motors, Inc.
3675 Frontage Road
Peru, IL 61354
lynnjp@aol.com

RE:     LETTER REQUESTING APPORTIONMENT

Dear Mr. Leyden:

We are writing on behalf of Mercedes-Benz USA, LLC ("**MBUSA**") regarding the proposed transfer of ownership interests in its MBUSA dealership assets between JP Motors, Inc. ("**Dealer**") and LASPO Motors, LLC ("**Proposed Buyer**"), as set forth in the Asset Purchase Agreement dated February 1, 2023 (the "**APA**"). We would like to address time-sensitive issues relating to the APA.

As you know, the APA not only provides for the purchase and sale of certain assets used in Dealer's Mercedes-Benz operations, but also provides for the purchase and sale of other assets used in Dealer's other line-make operations, including its separate Chevrolet and Nissan businesses. The APA provides that the goodwill for all Dealer's line-make operations is $6,500,000, but does not apportion or segregate the part of the proposed transaction that only constitutes the Mercedes-Benz brand.

Under Section IX.B. of the Mercedes-Benz Passenger Car and Light Truck Dealer Agreements, dated January 1, 2012 (collectively, the "**Dealer Agreements**") and 815 ILL. COMP. STAT. 710/4(e)(6)(A) (the "**Statute**"), MBUSA has a right of first refusal in connection with the MBUSA Transfer. However, MBUSA cannot evaluate or exercise its contractual and statutory rights of first refusal without the APA being apportioned in a manner that specifically describes the terms of the proposed Transfer. Dealer's submission of the APA without any such apportionment, therefore, is a material breach of the Dealer Agreements and a violation of the Statute.

For this reason, we request that Dealer provide (i) a good faith breakdown of the purchase price payable under the APA that is attributable to the MBUSA Transfer, and (ii) a good faith breakdown of the other terms of the APA that are attributable to the MBUSA Transfer. Alternatively, in the event that Dealer is either unable or unwilling to provide such information in compliance with the Dealer Agreements and the Statute, we request that Dealer withdraw the APA.

Alternatively, in the event that the Dealer is either unable or unwilling to provide such information in compliance with the Dealer Agreements and the Statute, we request that Dealer withdraw the APA.

We also request that Dealer, pursuant to the Statute, provide an accounting of the reasonable, actual expenses incurred to date by the Proposed Buyer in negotiating and implementing the MBUSA Transfer. Such reasonable expenses may include attorneys' fees, which do not exceed the usual, customary, and reasonable fees charged for similar work done for other clients.

Mercedes-Benz USA, LLC        Mercedes-Benz Group AG

One Mercedes-Benz Drive    Sandy Springs, GA 30328    770.705.0600                     1 of 2



Mercedes-Benz USA, LLC

     Time is of the essence, as under both the Dealer Agreement and the Statute, MBUSA has a limited amount of time in which to evaluate the proposed transfer and, if desired, to exercise its rights of first refusal. We therefore request that you provide us with the information described above, or alternatively that you notify us of your withdrawal of the APA, as soon as practicable but in all events within **five (5) business days of receipt of this letter**.

     Please take note that by making the requests set forth in this letter, MBUSA does not waive or forego, but rather expressly preserves, any and all of its contractual and statutory rights, relating to the APA and otherwise to the proposed transaction between Dealer and the Proposed Buyer.

Sincerely,

*Hannah J. Wilder*

Hannah J. Wilder
Department Manager of Network Operations
Network Development
MERCEDES-BENZ USA, LLC.

cc:    LASP Land Partners LLC, Attn.: John Crane, cranezoo@aol.com
       Lyman Law Firm, Attn.: Mark M. Lyman, mark@lymanlawus.com
       Burke Warren MacKay & Serritella, Attn.: Ira M. Levin, ilevin@burkelaw.com; Attn: Eric P. VanderPloeg:
       evanderploeg@burkelaw.com; Attn: Bradley M. Ader Email: bader@burkelaw.com

Mercedes-Benz USA, LLC

**VIA ELECTRONIC DELIVERY**

March 28, 2023

Joseph M. Leydon
JP Motors, Inc.
3675 Frontage Road
Peru, IL 61354
lynnjp@aol.com

      **RE:**    **FOLLOW-UP TO LETTER REQUESTING APPORTIONMENT UNDER ASSET PURCHASE AGREEMENT**

Dear Mr. Leydon:

     We are writing on behalf of Mercedes-Benz USA, LLC ("**MBUSA**") with respect to the asset and goodwill apportionment of the proposed sale and transfer of ownership interests in MBUSA dealership assets between JP Motors, Inc. (the "**Dealer**"), as seller, and LASPO Motors, LLC (the "**Proposed Buyer**"), as buyer, as set forth in the Asset Purchase Agreement dated February 1, 2023 (the "**APA**").

     Pursuant to that certain Letter Requesting Apportionment under Asset Purchase Agreement dated as of February 1, 2023, we asked that Dealer provide MBUSA with: **(I)** a good faith breakdown of the purchase price payable under the APA that is attributable to the Mercedes-Benz brand; **(II)** identification of the assets being sold under the APA that relate to the Mercedes-Benz brand; and **(III)** identification and a good faith breakdown of all the other terms of the APA that are attributable to the Mercedes-Benz brand.

     To date, we have not received the above items.

     As previously stated, under Section IX.B. of the Mercedes-Benz Passenger Car Dealer and Light Truck Dealer Agreements (collectively, the "**Dealer Agreements**") and 815 ILL. COMP. STAT. 710/4(G) (the "**Statute**"), MBUSA has a right of first refusal in connection with the proposed transaction. However, MBUSA cannot evaluate or exercise its contractual and statutory rights of first refusal without the APA being apportioned in a manner that specifically describes the terms of the proposed transaction. Dealer's submission of the APA without any such apportionment, therefore, is a material breach of the Dealer Agreements and a violation of the Statute.

     Without the apportionment, MBUSA cannot complete its review of the proposed transaction and its evaluation of its rights under Dealer's Mercedes-Benz Dealer Agreements. In this regard, MBUSA continues to expressly reserve all of its contractual and statutory rights relating to the APA and the proposed transaction.



Mercedes-Benz USA, LLC

We look forward to receiving the requested explanation and documents. *Please provide us with this information by no later than close of business on April 6, 2023.* Your failure to provide the requested breakout by the deadline shall be construed as your refusal to do so.

Sincerely,

*Hannah J. Wilder*

Hannah J. Wilder
Department Manager of Network Operations
Network Development
MERCEDES-BENZ USA, LLC.

cc:     LASP Land Partners LLC, Attn.: John Crane, cranezoo@aol.com
        Lyman Law Firm, Attn.: Mark M. Lyman, mark@lymanlawus.com
        Burke Warren MacKay & Serritella, Attn.: Ira M. Levin, ilevin@burkelaw.com; Attn: Eric P.
        VanderPloeg: evanderploeg@burkelaw.com; Attn: Bradley M. Ader Email: bader@burkelaw.com

# EXHIBIT 3

# MERCEDES-BENZ USA, LLC

### Mercedes-Benz
### Passenger Car Dealer Agreement

### <u>Table of Contents</u>

| | | Page |
|---|---|---|
| **DEALER AGREEMENT** | | |
| | MERCEDES-BENZ STATEMENT OF COMMITMENT | (i) |
| A. | APPOINTMENT OF DEALER | (ii) |
| B. | TERM | (ii) |
| C. | ADDITIONAL PROVISIONS | (ii) |
| D. | DEALER OWNERSHIP | (ii) |
| E. | DEALER MANAGEMENT | (iii) |
| F. | DEALERSHIP FACILITIES | (iii) |
| G. | MERCEDES-BENZ DEALER BOARD | (iv) |
| H. | MODIFICATION OF AGREEMENT | (iv) |
| I. | EXECUTION OF AGREEMENT | (iv) |
| J. | MUTUAL RELEASE | (iv) |
| K. | CERTIFICATION | (iv) |
| | FINAL PARAGRAPH | (v) |
| **STANDARD PROVISIONS** | | |
| I. | ACQUISITION, DELIVERY AND INVENTORY OF MERCEDES-BENZ PASSENGER CAR PRODUCTS | 1 |
| A. | PRICES AND TERMS OF SALE | 1 |
| B. | AVAILABILITY AND ALLOCATION OF PRODUCTS | 1 |
| C. | DELIVERY OF PRODUCTS | 1 |
| D. | PASSAGE OF TITLE | 1 |
| E. | RISK OF DAMAGE OR LOSS | 2 |
| F. | DELAY OR FAILURE OF DELIVERY | 2 |
| G. | DIVERSION AND STORAGE CHARGES | 2 |
| H. | SECURITY INTEREST | 2 |
| 1. | Grant of Security Interest | 2 |
| 2. | Default in Payment | 3 |
| 3. | Assembly of Collateral, Payment of Costs and Notices | 3 |
| 4. | Recording and Further Assurances | 3 |
| 5. | Records and Schedules of Inventory | 3 |

MB 902 (1/12)

|  |  |  | **Page** |
|---|---|---|---|
|  | I. | CHANGES OF DESIGN, SPECIFICATIONS OR OPTIONS | 4 |
|  | J. | DISCONTINUANCE OF MANUFACTURE OR IMPORTATION | 4 |
|  | K. | MINIMUM VEHICLE INVENTORIES | 4 |
|  | L. | PRODUCT MODIFICATIONS | 4 |
| II. |  | DEALER'S MARKETING AND SALES OF MERCEDES-BENZ PASSENGER CAR PRODUCTS | 4 |
|  | A. | DEALER'S GENERAL RESPONSIBILITIES | 4 |
|  | B. | EXPORT POLICY | 5 |
|  | C. | MERCEDES-BENZ DEALER ASSOCIATION | 5 |
|  | D. | PRE-OWNED VEHICLES | 6 |
|  | E. | AREA OF INFLUENCE | 6 |
|  | F. | EVALUATION OF DEALER'S MARKETING AND SALES PERFORMANCE | 6 |
| III. |  | DEALER'S SERVICE OBLIGATIONS | 6 |
|  | A. | CUSTOMER SERVICE STANDARDS | 6 |
|  | B. | DEALER'S SPECIFIC SERVICE OBLIGATIONS | 7 |
|  |  | 1. Pre-Delivery Inspections and Service | 7 |
|  |  | 2. Warranty Repairs and Policy Service | 7 |
|  |  | 3. Service/Recall Campaign Inspections and Corrections | 8 |
|  |  | 4. Roadside Assistance Program | 8 |
|  | C. | USE OF PARTS AND ACCESSORIES IN NON-WARRANTY SERVICE | 8 |
|  |  | 1. Quality Standards | 8 |
|  |  | 2. Dealer's Disclosures as to Use of and Warranties for Non-Genuine Parts and Accessories | 8 |
|  | D. | COMPLIANCE WITH SAFETY AND EMISSION CONTROL REQUIREMENTS | 9 |
|  | E. | COMPLIANCE WITH CONSUMER PROTECTION STATUTES, RULES AND REGULATIONS | 10 |
| IV. |  | DEALER'S SERVICE AND PARTS ORGANIZATION | 10 |
|  | A. | ORGANIZATION AND STANDARDS | 10 |
|  | B. | SERVICE EQUIPMENT AND SPECIAL TOOLS | 10 |

MB 902 (1/12)

|  |  |  | **Page** |
|---|---|---|---|
|  | 1. | Mercedes-Benz Special Tools | 11 |
|  | 2. | Mercedes-Benz Service Equipment | 11 |
| C. | | PARTS STOCKING AND SERVICE LEVELS | 11 |
| D. | | AFTER HOURS DELIVERY | 11 |
| E. | | ASSISTANCE PROVIDED BY MBUSA | 12 |
|  | 1. | Service Manuals and Materials | 12 |
|  | 2. | Field Personnel Assistance | 12 |
| F. | | EVALUATION OF DEALER'S SERVICE AND PARTS PERFORMANCE | 12 |
| G. | | ADDITIONAL FACILITIES OR LOCATIONS | 12 |
| V. | | CUSTOMER SATISFACTION RESPONSIBILITIES | 13 |
| A. | | DEALER'S CUSTOMER SATISFACTION OBLIGATIONS | 13 |
|  | 1. | Dealer's Customer Satisfaction Plan | 13 |
|  | 2. | Employee Training | 13 |
|  | 3. | Customer Assistance Response System | 13 |
| B. | | EVALUATION OF DEALER'S CUSTOMER SATISFACTION PERFORMANCE | 13 |
| VI. | | DEALERSHIP FACILITIES AND IDENTIFICATION | 14 |
| A. | | LOCATION AND FACILITIES | 14 |
| B. | | CHANGES AND ADDITIONS | 14 |
| C. | | DEALER'S OPERATING HOURS | 15 |
| D. | | CORPORATE IDENTITY | 15 |
| E. | | EVALUATION OF DEALERSHIP FACILITIES | 15 |
| F. | | OWNERSHIP AND USE OF MERCEDES-BENZ MARKS | 15 |
|  | 1. | Validity and Exclusive Ownership of Mercedes-Benz Marks | 15 |
|  | 2. | Use by Dealer | 16 |
|  | 3. | Discontinuance of Use | 16 |
|  | 4. | Enforcement | 16 |
| VII. | | WARRANTIES | 17 |

MB 902 (1/12)

| | | Page |
|---|---|---|
| VIII. | CAPITAL, CREDIT, RECORDS AND UNIFORM SYSTEMS | 17 |
| A. | NET WORKING CAPITAL | 17 |
| B. | FLOORING AND LINES OF CREDIT | 17 |
| C. | PAYMENT TERMS | 18 |
| D. | UNIFORM ACCOUNTING SYSTEM | 18 |
| E. | RECORDS MAINTENANCE | 18 |
| F. | EXAMINATION OF DEALERSHIP ACCOUNTS AND RECORDS | 18 |
| G. | TAXES | 19 |
| H. | CONFIDENTIALITY | 19 |
| I. | MERCEDES-BENZ DEALER COMMUNICATIONS SYSTEM, PROPRIETARY MANUFACTURER SYSTEMS, AND INTERNET CONNECTIVITY | 19 |
| J. | SALES AND SERVICE REPORTING | 19 |
| IX. | TRANSFERS | 20 |
| A. | SALE OF ASSETS OR OWNERSHIP INTEREST | 20 |
| B. | RIGHT OF FIRST REFUSAL OR OPTION TO PURCHASE | 21 |
| 1. | Rights Granted | 21 |
| 2. | Exercise of MBUSA's Rights | 22 |
| 3. | Right of First Refusal | 22 |
| 4. | Option to Purchase | 22 |
| 5. | Dealer's Obligations | 23 |
| X. | SUCCESSION RIGHTS UPON DEATH OR INCAPACITY | 23 |
| A. | SUCCESSION TO OWNERSHIP AFTER DEATH OF OWNER | 23 |
| B. | INCAPACITY OF OWNER | 24 |
| C. | NOMINATION OF SUCCESSOR PRIOR TO DEATH OR INCAPACITY OF OWNER | 24 |
| XI. | TERMINATION | 25 |
| A. | VOLUNTARY TERMINATION BY DEALER | 25 |
| B. | TERMINATION FOR CAUSE | 25 |
| 1. | Immediate Termination | 25 |
| 2. | Termination Upon Sixty Days Notice | 27 |
| 3. | Termination for Failure of Performance | 28 |
| 4. | Termination Upon Death or Incapacity | 28 |

| | | | Page |
|---|---|---|---|
| C. | TERMINATION UPON TERMINATION OF DISTRIBUTORSHIP | | 28 |
| D. | TERMINATION FOR FAILURE OF MBUSA TO BE LICENSED | | 28 |
| E. | TERMINATION UPON OFFERING TO ENTER INTO A NEW OR AMENDED PASSENGER CAR DEALER AGREEMENT | | 28 |
| F. | NOTICE OF TERMINATION | | 29 |
| G. | CONTINUANCE OF BUSINESS RELATIONS | | 29 |
| H. | REPURCHASE PROVISIONS | | 29 |
| | 1. | MBUSA's Obligations | 29 |
| | 2. | Dealer's Responsibilities | 30 |
| | 3. | Payment by MBUSA | 31 |
| XII. | DEFENSE AND INDEMNIFICATION | | 31 |
| A. | DEFENSE AND INDEMNIFICATION BY MBUSA | | 31 |
| B. | DEFENSE AND INDEMNIFICATION BY DEALER | | 32 |
| C. | CONDITIONAL DEFENSE AND/OR INDEMNIFICATION | | 33 |
| D. | THE EFFECT OF SUBSEQUENT DEVELOPMENTS | | 33 |
| E. | TIME TO RESPOND AND RESPONSIBILITIES OF THE PARTIES | | 33 |
| XIII. | NOTICE OF BREACH OR FAILURE TO ACT IN GOOD FAITH | | 34 |
| XIV. | GENERAL PROVISIONS | | 34 |
| A. | NOTICES | | 34 |
| B. | NO IMPLIED WAIVERS | | 34 |
| C. | SOLE AGREEMENT OF THE PARTIES | | 34 |
| D. | DEALER NOT AN AGENT OR REPRESENTATIVE | | 35 |
| E. | ASSIGNMENT OF RIGHTS OR DELEGATIONS OF DUTIES | | 35 |
| F. | NO FRANCHISE FEE | | 35 |
| G. | BENEFIT | | 35 |
| H. | NEW JERSEY LAW | | 35 |
| I. | COMPLIANCE | | 35 |
| XV. | DEFINITIONS | | 36 |
| XVI. | ADDITIONAL PROVISIONS | | 37 |

MB 902 (1/12)

such other sales reporting requirements (i.e. reporting of sales, customer traffic, and customer order banks) as MBUSA may establish from time to time. Dealer also agrees to accurately report to MBUSA other relevant information as MBUSA may reasonably require including repair order and parts invoice data for Mercedes-Benz customers, and to furnish MBUSA with such other reports as MBUSA may reasonably require and establish from time to time.

## IX.   TRANSFERS

### A.   SALE OF ASSETS OR OWNERSHIP INTEREST

This is a personal service agreement that MBUSA has entered into in reliance upon the personal qualifications, reputation, integrity, expertise and commitment of Owners and Dealer Operator. For this reason, Dealer agrees to obtain MBUSA's prior written consent to any proposed sale or transfer of Dealer's principal assets or any ownership interest of Owner, which consent shall not be unreasonably withheld.

In deciding whether to consent to a proposed sale or transfer, and in accordance with MBUSA's then criteria for the evaluation of a proposed purchase or transfer, MBUSA will evaluate the proposed Owners' and proposed Dealer Operators' qualifications, reputation, integrity, commitment, and operational plan, including as demonstrated through the proposed Owners' and proposed Dealer Operators' prior operation or ownership of any other new motor vehicle dealerships, the proposed Owners' and proposed Dealer Operators' capital and access to financing, and the facilities that the proposed Owners' and proposed Dealer Operators' intend to utilize as Dealership Facilities, among other factors pertinent to the evaluation of the proposed sale or transfer.

MBUSA shall not be obligated to execute a new Agreement with a proposed transferee of such assets or ownership interest unless Dealer first makes arrangements acceptable to MBUSA to satisfy any outstanding indebtedness to MBUSA.

## B.   RIGHT OF FIRST REFUSAL OR OPTION TO PURCHASE

Subject to Section IX.A., the parties agree as follows:

### 1.   Rights Granted

If a proposal to sell Dealer's principal assets used in its Dealership Operations or transfer the majority ownership interest in Dealer with respect to its Dealership Operations is submitted by Dealer to MBUSA, or in the event of the death of the majority Owner of Dealer, MBUSA has a right of first refusal or option to purchase such assets or ownership interest, including any leasehold interest or realty. MBUSA's exercise of its right or option under this Section IX.B supersedes Dealer's right to transfer its interest in, or ownership of, the dealership and may be exercised without regard to the quality of the personal qualifications, reputation, integrity, expertise or commitment of the proposed Owners and proposed Dealer Operators, or whether the proposed buyer meets any of MBUSA's then other criteria for the evaluation of a proposed purchase or transfer. MBUSA's right or option may be assigned by it to any third party and MBUSA hereby guarantees the full payment to Dealer of the purchase price by such assignee. MBUSA may disclose the terms of any pending buy/sell agreement and any other relevant dealership performance information to any potential assignee. MBUSA's rights under this Section IX.B will be binding on and enforceable against any assignee or successor in interest of Dealer or purchaser of Dealer's assets.

Anything herein to the contrary notwithstanding, MBUSA shall not have a right of first refusal or option to purchase Dealer's principal assets or the majority interest in Dealer if the proposed transferee is the spouse or a child of an Owner and such spouse or child meets the criteria then currently used by MBUSA in qualifying owners of Mercedes-Benz light truck dealers. If the proposed transferee fails to meet such criteria due to insufficient personal qualifications or expertise, MBUSA may, in its sole discretion, approve the transfer subject to the proposed transferee's successful completion of such training as MBUSA may require. If the proposed transferee fails to complete such training successfully or otherwise fails to meet the criteria then currently used by MBUSA in qualifying such owners within the time period prescribed by MBUSA, MBUSA may thereafter exercise its right of first refusal or option to purchase under this Section IX.B.

2. **Exercise of MBUSA's Rights**

MBUSA shall have sixty (60) days from the following events within which to exercise its option to purchase or right of first refusal: (i) MBUSA's receipt of all data and documentation customarily required by it to evaluate a proposed transfer of ownership; (ii) MBUSA's receipt of notice from Dealer of the death of the majority Owner of Dealer, or (iii) MBUSA's disapproval of any application submitted by Owner's heirs pursuant to Section X. MBUSA's exercise of its right of first refusal under this Section IX.B neither shall be dependent upon nor require its prior refusal to approve the proposed transfer.

3. **Right of First Refusal**

If Dealer has entered into a bona fide written buy/sell agreement for its dealership business or assets, MBUSA's right under this Section IX.B is a right of first refusal, enabling MBUSA to assume the buyer's rights and obligations under such buy/sell agreement, and to cancel this Agreement and all rights granted Dealer. Upon MBUSA's request, Dealer agrees to provide other documents relating to the proposed transfer and any other information which MBUSA deems appropriate, including, but not limited to, those reflecting other agreements or understandings between the parties to the buy/sell agreement. If Dealer refuses to provide such documentation or to state in writing that no such documents exist, it shall be conclusively presumed that the buy/sell agreement is not a bona fide agreement. If Dealer withdraws its proposal in writing within ten (10) days following Dealer's receipt of MBUSA's notice exercising its right of first refusal, such right shall be null and void.

If, as a result of MBUSA's exercise of its right of first refusal, Dealer is contractually obligated to reimburse the initial buyer for reasonable attorney's fees, broker's fees, title searches, property inspections, and other similar costs and fees that the buyer incurred in connection with the buy/sell agreement, MBUSA shall reimburse Dealer for such costs and fees incurred through the date of MBUSA's exercise of its right of first refusal in an amount up to but not exceeding Fifty Thousand Dollars ($50,000.00). Dealer shall provide MBUSA with all documents substantiating such costs and fees as MBUSA may reasonably request.

4. **Option to Purchase**

In the event of the death of the majority Owner or if Dealer submits a proposal which MBUSA determines is not bona fide or in good faith, MBUSA has the option to purchase the principal assets of Dealer utilized in Dealership Operations, including real estate and leasehold interest, and to cancel this Agreement and the rights granted Dealer hereunder. The purchase price of the dealership assets will be determined by good faith negotiations between the parties.

5. **Dealer's Obligations**

Upon MBUSA's exercise of its right or option and tender of performance under the buy/sell agreement or upon whatever terms may be expressed in the buy/sell agreement, Dealer shall forthwith transfer the affected real property by warranty deed conveying marketable title free and clear of all liens, claims, mortgages, encumbrances, tenancies and occupancies. The warranty deed shall be in proper form for recording, and Dealer shall deliver complete possession of the property and deed at the time of closing. Dealer shall also furnish to MBUSA all copies of any easements, licenses or other documents affecting the property or Dealership Operations and shall assign any permits or licenses that are necessary or desirable for the use of or appurtenant to the property or the conduct of such operations. Dealer also agrees to execute and deliver to MBUSA instruments satisfactory to MBUSA conveying title to all personal property, including leasehold interests, involved in the transfer or sale to MBUSA. If any personal property is subject to any lien or charge of any kind, Dealer agrees to procure the discharge and satisfaction thereof prior to the closing of sale of such property to MBUSA.

## X.  SUCCESSION RIGHTS UPON DEATH OR INCAPACITY

### A.  SUCCESSION TO OWNERSHIP AFTER DEATH OF OWNER

In the event that an Owner dies and his or her interest in Dealer passes directly to any person or persons ("Heirs") who wish to succeed to Owner's interest, then Owner's legal representative must notify MBUSA within sixty (60) days of the death of Owner of such Heir's or Heirs' intent to succeed Owner. The legal representative also must then designate a proposed Dealer Operator for MBUSA's approval. The effect of such notice from Owner's legal representative will be to suspend any notice of termination provided for in Section XI.B.4 issued hereunder.

Upon delivery of such notice, Owner's legal representative shall immediately request any person(s) identified by it as intending to succeed Owner and the designated candidate for Dealer Operator to submit an application and to provide all personal and financial information that MBUSA may reasonably and customarily require in connection with its review of such applications. All requested information must be provided promptly to MBUSA and in no case later than thirty (30) days after receipt of such request from Owner's legal representative. MBUSA shall have sixty (60) days after its receipt of all requested information in which to: (i) review such application(s) pursuant to the then current criteria generally applied by MBUSA in qualifying owners and/or dealer operators of Mercedes-Benz light truck dealers, and (ii) either approve or disapprove the application(s); provided, however, that if MBUSA does not receive such application(s) and all requested information within thirty (30) days of Owner's legal representative's request therefore, MBUSA shall have no

# MERCEDES-BENZ USA, LLC

## Mercedes-Benz
## Light Truck Dealer Agreement

### Table of Contents

|  |  | Page |
|---|---|---|
| **DEALER AGREEMENT** | | |
| | MERCEDES-BENZ STATEMENT OF COMMITMENT | (i) |
| A. | APPOINTMENT OF DEALER | (ii) |
| B. | TERM | (ii) |
| C. | ADDITIONAL PROVISIONS | (ii) |
| D. | DEALER OWNERSHIP | (ii) |
| E. | DEALER MANAGEMENT | (iii) |
| F. | DEALERSHIP FACILITIES | (iii) |
| G. | MERCEDES-BENZ DEALER BOARD | (iv) |
| H. | MODIFICATION OF AGREEMENT | (iv) |
| I. | EXECUTION OF AGREEMENT | (iv) |
| J. | MUTUAL RELEASE | (iv) |
| K. | CERTIFICATION | (iv) |
| | FINAL PARAGRAPH | (v) |
| **STANDARD PROVISIONS** | | |
| I. | ACQUISITION, DELIVERY AND INVENTORY OF MERCEDES-BENZ LIGHT TRUCK PRODUCTS | 1 |
| A. | PRICES AND TERMS OF SALE | 1 |
| B. | AVAILABILITY AND ALLOCATION OF PRODUCTS | 1 |
| C. | DELIVERY OF PRODUCTS | 1 |
| D. | PASSAGE OF TITLE | 1 |
| E. | RISK OF DAMAGE OR LOSS | 2 |
| F. | DELAY OR FAILURE OF DELIVERY | 2 |
| G. | DIVERSION AND STORAGE CHARGES | 2 |
| H. | SECURITY INTEREST | 2 |
| 1. | Grant of Security Interest | 2 |
| 2. | Default in Payment | 3 |
| 3. | Assembly of Collateral, Payment of Costs and Notices | 3 |
| 4. | Recording and Further Assurances | 3 |
| 5. | Records and Schedules of Inventory | 3 |

such other sales reporting requirements (i.e. reporting of sales, customer traffic, and customer order banks) as MBUSA may establish from time to time. Dealer also agrees to accurately report to MBUSA other relevant information as MBUSA may reasonably require including repair order and parts invoice data for Mercedes-Benz customers, and to furnish MBUSA with such other reports as MBUSA may reasonably require and establish from time to time.

## IX. TRANSFERS

### A. SALE OF ASSETS OR OWNERSHIP INTEREST

This is a personal service agreement that MBUSA has entered into in reliance upon the personal qualifications, reputation, integrity, expertise and commitment of Owners and Dealer Operator. MBUSA has also entered into this Agreement in reliance on Dealer's agreement at all times to conduct Dealership Operations hereunder in conjunction with, and at the "Approved Location(s)" and "Dealership Facilities" for, its "Dealership Operations" under the Mercedes-Benz Passenger Car Dealer Agreement. For these reasons, Dealer agrees to obtain MBUSA's prior written consent to any proposed sale or transfer of Dealer's principal assets or any ownership interest of Owner, which consent shall not be unreasonably withheld; provided, however, that anything herein to the contrary notwithstanding, Dealer agrees that (i) it shall not sell or transfer any such assets or ownership interest relating to the conduct of Dealership Operations hereunder separate and apart from the assets or ownership interest relating to the conduct of "Dealership Operations" under the Mercedes-Benz Passenger Car Dealer Agreement, and that (ii) any such attempted sale or transfer shall be void and not binding on MBUSA.

In deciding whether to consent to a proposed sale or transfer, and in accordance with MBUSA's then criteria for the evaluation of a proposed purchase or transfer, MBUSA will evaluate the proposed Owners' and proposed Dealer Operators' qualifications, reputation, integrity, commitment, and operational plan, including as demonstrated through the proposed Owners' and proposed Dealer Operators' prior operation or ownership of any other new motor vehicle dealerships, the proposed Owners' and proposed Dealer Operators' capital and access to financing, and the facilities that the proposed Owners' and proposed Dealer Operators' intend to utilize as Dealership Facilities, among other factors pertinent to the evaluation of the proposed sale or transfer.

MBUSA shall not be obligated to execute a new Agreement with a proposed transferee of such assets or ownership interest unless Dealer first makes arrangements acceptable to MBUSA to satisfy any outstanding indebtedness to MBUSA.

**B.  RIGHT OF FIRST REFUSAL OR OPTION TO PURCHASE**

Subject to Section IX.A., the parties agree as follows:

1.  **Rights Granted**

If a proposal to sell Dealer's principal assets used in its Dealership Operations or transfer the majority ownership interest in Dealer with respect to its Dealership Operations is submitted by Dealer to MBUSA, or in the event of the death of the majority Owner of Dealer, MBUSA has a right of first refusal or option to purchase such assets or ownership interest, including any leasehold interest or realty. MBUSA's exercise of its right or option under this Section IX.B supersedes Dealer's right to transfer its interest in, or ownership of, the dealership and may be exercised without regard to the quality of the personal qualifications, reputation, integrity, expertise or commitment of the proposed Owners and proposed Dealer Operators, or whether the proposed buyer meets any of MBUSA's then other criteria for the evaluation of a proposed purchase or transfer. MBUSA's right or option may be assigned by it to any third party and MBUSA hereby guarantees the full payment to Dealer of the purchase price by such assignee. MBUSA may disclose the terms of any pending buy/sell agreement and any other relevant dealership performance information to any potential assignee. MBUSA's rights under this Section IX.B will be binding on and enforceable against any assignee or successor in interest of Dealer or purchaser of Dealer's assets.

Anything herein to the contrary notwithstanding, MBUSA shall not have a right of first refusal or option to purchase Dealer's principal assets or the majority interest in Dealer if the proposed transferee is the spouse or a child of an Owner and such spouse or child meets the criteria then currently used by MBUSA in qualifying owners of Mercedes-Benz light truck dealers. If the proposed transferee fails to meet such criteria due to insufficient personal qualifications or expertise, MBUSA may, in its sole discretion, approve the transfer subject to the proposed transferee's successful completion of such training as MBUSA may require. If the proposed transferee fails to complete such training successfully or otherwise fails to meet the criteria then currently used by MBUSA in qualifying such owners within the time period prescribed by MBUSA, MBUSA may thereafter exercise its right of first refusal or option to purchase under this Section IX.B.

2. **Exercise of MBUSA's Rights**

MBUSA shall have sixty (60) days from the following events within which to exercise its option to purchase or right of first refusal: (i) MBUSA's receipt of all data and documentation customarily required by it to evaluate a proposed transfer of ownership; (ii) MBUSA's receipt of notice from Dealer of the death of the majority Owner of Dealer, or (iii) MBUSA's disapproval of any application submitted by Owner's heirs pursuant to Section X. MBUSA's exercise of its right of first refusal under this Section IX.B neither shall be dependent upon nor require its prior refusal to approve the proposed transfer.

3. **Right of First Refusal**

If Dealer has entered into a bona fide written buy/sell agreement for its dealership business or assets, MBUSA's right under this Section IX.B is a right of first refusal, enabling MBUSA to assume the buyer's rights and obligations under such buy/sell agreement, and to cancel this Agreement and all rights granted Dealer. Upon MBUSA's request, Dealer agrees to provide other documents relating to the proposed transfer and any other information which MBUSA deems appropriate, including, but not limited to, those reflecting other agreements or understandings between the parties to the buy/sell agreement. If Dealer refuses to provide such documentation or to state in writing that no such documents exist, it shall be conclusively presumed that the buy/sell agreement is not a bona fide agreement. If Dealer withdraws its proposal in writing within ten (10) days following Dealer's receipt of MBUSA's notice exercising its right of first refusal, such right shall be null and void.

If, as a result of MBUSA's exercise of its right of first refusal, Dealer is contractually obligated to reimburse the initial buyer for reasonable attorney's fees, broker's fees, title searches, property inspections, and other similar costs and fees that the buyer incurred in connection with the buy/sell agreement, MBUSA shall reimburse Dealer for such costs and fees incurred through the date of MBUSA's exercise of its right of first refusal in an amount up to but not exceeding Fifty Thousand Dollars ($50,000.00). Dealer shall provide MBUSA with all documents substantiating such costs and fees as MBUSA may reasonably request.

4. **Option to Purchase**

In the event of the death of the majority Owner or if Dealer submits a proposal which MBUSA determines is not bona fide or in good faith, MBUSA has the option to purchase the principal assets of Dealer utilized in Dealership Operations, including real estate and leasehold interest, and to cancel this Agreement and the rights granted Dealer hereunder. The purchase price of the dealership assets will be determined by good faith negotiations between the parties.

MB 902-LT (01/12)                                   - 22 -

5.    **Dealer's Obligations**

Upon MBUSA's exercise of its right or option and tender of performance under the buy/sell agreement or upon whatever terms may be expressed in the buy/sell agreement, Dealer shall forthwith transfer the affected real property by warranty deed conveying marketable title free and clear of all liens, claims, mortgages, encumbrances, tenancies and occupancies. The warranty deed shall be in proper form for recording, and Dealer shall deliver complete possession of the property and deed at the time of closing. Dealer shall also furnish to MBUSA all copies of any easements, licenses or other documents affecting the property or Dealership Operations and shall assign any permits or licenses that are necessary or desirable for the use of or appurtenant to the property or the conduct of such operations. Dealer also agrees to execute and deliver to MBUSA instruments satisfactory to MBUSA conveying title to all personal property, including leasehold interests, involved in the transfer or sale to MBUSA. If any personal property is subject to any lien or charge of any kind, Dealer agrees to procure the discharge and satisfaction thereof prior to the closing of sale of such property to MBUSA.

X.    **SUCCESSION RIGHTS UPON DEATH OR INCAPACITY**

A.    **SUCCESSION TO OWNERSHIP AFTER DEATH OF OWNER**

In the event that an Owner dies and his or her interest in Dealer passes directly to any person or persons ("Heirs") who wish to succeed to Owner's interest, then Owner's legal representative must notify MBUSA within sixty (60) days of the death of Owner of such Heir's or Heirs' intent to succeed Owner. The legal representative also must then designate a proposed Dealer Operator for MBUSA's approval. The effect of such notice from Owner's legal representative will be to suspend any notice of termination provided for in Section XI.B.4 issued hereunder.

Upon delivery of such notice, Owner's legal representative shall immediately request any person(s) identified by it as intending to succeed Owner and the designated candidate for Dealer Operator to submit an application and to provide all personal and financial information that MBUSA may reasonably and customarily require in connection with its review of such applications. All requested information must be provided promptly to MBUSA and in no case later than thirty (30) days after receipt of such request from Owner's legal representative. MBUSA shall have sixty (60) days after its receipt of all requested information in which to: (i) review such application(s) pursuant to the then current criteria generally applied by MBUSA in qualifying owners and/or dealer operators of Mercedes-Benz light truck dealers, and (ii) either approve or disapprove the application(s); provided, however, that if MBUSA does not receive such application(s) and all requested information within thirty (30) days of Owner's legal representative's request therefore, MBUSA shall have no

# EXHIBIT 4

# LYMAN LAW FIRM

Attorneys at Law



**Direct Contact:**
Mark M. Lyman
Partner
(312) 762-9524

mark@lymanlawus.com
www.lymanlawus.com

April 3, 2023

Email Only
**Hannah.wilder@mbusa.com**

Hannah J. Wilder
Supervisor of Network Operations
Network Development
Mercedes-Benz USA, LLC
One Mercedes-Benz Drive
Sandy Springs, Georgia  30328

     RE:   Mercedes-Benz of Peru

Dear Ms. Wilder:

     On behalf of JP Motors, Inc. ("JP Motors"), I am responding to your letter of March 28, 2023.

     The Asset Purchase Agreement between JP Motors and Laspo Motors, LLC ("Laspo Motors") for the sale of its Mercedes-Benz, Chevrolet and Nissan assets does not and cannot apportion the Mercedes-Benz assets from the assets of the other brands being purchased. The purchase price was negotiated as a single unallocated amount with consideration being given to the ability to continue to operate all of the brands at the dealership premises, which arrangement was previously approved by Mercedes-Benz, Chevrolet and Nissan. By operating the dealership in this fashion, particularly in the smaller market where the dealership is located, my client and any purchaser can share certain costs and otherwise enjoy the economies of scale.

     Like the Asset Purchase Agreement, the purchase price in the corresponding Real Estate Purchase and Sale Agreement is unallocated among brands and was priced based on the integrated dealership, which has operated that way for many years.

     Under Illinois law, Mercedes cannot choose which terms it wishes to match and which it does not. Nor does Mercedes have a right to try to separate the seller's assets by exercising a right

---

227 West Monroe Street, Suite 2650, Chicago, Illinois 60606
Fax: (312) 704-4500

Hannah J. Wilder
Supervisor of Network Operations
Network Development
Mercedes-Benz USA, LLC
Page 2

of first refusal for less than all of the assets being sold to the single third party purchaser without violating the Illinois Motor Vehicle Franchise Act. Notably, the other manufacturers involved in this sale have accepted the parties' position and not requested any allocation.

Accordingly, we ask that Mercedes move forward with Laspo Motors' application and the expected approval.

If you have any questions, please do not hesitate to contact me or have your counsel contact me.

Very truly yours,

Mark M. Lyman

cc      Joseph Leydon (via email)
        John Crane (via email)
        Ira M. Levin (via email)