UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Mercedes-Benz USA, LLC, <br><br> Plaintiff, <br><br> v. <br><br> JP Motors, Inc., <br><br> Defendant. | Case No. 23-cv-02281 <br><br> Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Mercedes-Benz USA, LLC ("MBUSA") brings this breach of contract and declaratory judgment action against JP Motors, Inc. ("JP Motors"). JP Motors has moved to dismiss under Federal Rule of Civil Procedure 12(b)(1) or alternatively stay the proceeding. [17]. For the reasons explained below, this Court grants JP Motors's motion to dismiss.

**I. Background**

MBUSA distributes new passenger cars and sport utility vehicles to its network of Mercedes-Benz dealers. [27] ("Compl.") ¶¶ 4, 6. JP Motors is an authorized Mercedes-Benz dealer pursuant to agreements ("Dealer Agreements") with MBUSA. *Id.* ¶ 9. JP Motors operates a Mercedes-Benz dealership, as well as Nissan and Chevrolet dealerships, at the same property in Peru, Illinois. *Id.* ¶¶ 8, 10.

In February 2023, JP Motors entered into an agreement with Lapso Motors to sell and transfer its Mercedes-Benz, Chevrolet, and Nissan dealerships. *Id.* ¶ 19. JP Motors gave notice of the proposed package sale to MBUSA. *Id.* ¶ 23. Within 60 days

1

of receiving all of the reasonable and customary information to evaluate a sale, MBUSA is obligated to inform JP Motors whether (1) it approves or disapproves the sale and (2) whether it will exercise its right of first refusal ("ROFR"). *Id.* ¶¶ 16–17.

The dispute boils down to whether JP Motors must provide an apportionment or break out of the sale price of the Mercedes-Benz, Chevrolet, and Nissan dealerships. *Id.* ¶ 22. MBUSA contends that JP Motors's submission of the proposed package sale without an apportionment of the Mercedes-Benz assets does not preserve MBUSA's ROFR under the Dealer Agreements. *Id.* ¶ 22. JP Motors argues that the Illinois Motor Vehicle Franchise Act (the "Act"), 815 ILL. COMP. STAT. 710 §§ 1–32, which regulates contractual relationships between distributors and dealers, prohibits MBUSA from exercising its ROFR over anything less than the package transaction. [57] at 1.

On April 11, 2023, MBUSA brought this breach of contract action seeking declarations that (1) MBUSA has the right to have the purchase price broken out as to the Mercedes-Benz assets; (2) this right is protected by the Act; (3) the time period for MBUSA to respond to the sale does not begin until JP Motors provides the breakout; and (4) JP Motors cannot transfer the Mercedes-Benz assets unless it first provides the breakout.[1] Compl. ¶ 45.

Three days after this case was filed, JP Motors filed an administrative protest with the Illinois Motor Vehicle Review Board ("Board") alleging, among other things,

---

[1] MBUSA also seeks a preliminary injunction [8] that (1) declares the deadline for MBUSA to respond to the proposed sale has not commenced; (2) enjoins JP Motors from closing the sale; and (3) enjoins JP Motors from taking other action that would interfere with MBUSA's ROFR. [28] at 2.

2

that MBUSA violated the Act by refusing to process the buyer's application and demanding an apportionment of the purchase price. [18], Ex. 1. JP Motors also filed the present motion to dismiss or stay this action. [17].

On April 20, 2023, the Court reserved ruling on MBUSA's motion for a preliminary injunction. [19]. At the hearing, MBUSA indicated that it would move to dismiss the administrative protest for lack of jurisdiction. [19]; [20] at 23:7–15. After the parties failed to reach a settlement before an administrative law judge, this Court stayed this case pending a ruling on MBUSA's motion to dismiss the administrative protest. [36]. In the interim, the Court granted MBUSA a stay of all contractual and statutory deadlines under its Dealer Agreements with JP Motors and the Act to approve, disapprove, or exercise its ROFR over the proposed sale. [50]; [53]; [58]. On October 11, 2023, the Board's hearing officer denied MBUSA's motion to dismiss without prejudice. [57-1]. The Board's hearing officer set a hearing on the merits on January 16, 2024. [42-2].

## II. Legal Standard

A Rule 12(b)(1) motion seeks dismissal of an action over which a court allegedly lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). In evaluating a motion brought under Rule 12(b)(1), the court accepts as true the plaintiff's well-pleaded allegations and draws all reasonable inferences in favor of the nonmoving party. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir.1999). Nevertheless, the party asserting jurisdiction bears the burden of establishing that jurisdiction is satisfied. *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 913 (7th Cir. 2009). The court

3

may "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Long*, 182 F.3d at 554 (quoting *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993)) (internal quotation marks omitted).

### III. Analysis

JP Motors argues that the Court should decline to exercise federal jurisdiction based on the abstention doctrine set forth in *Buford v. Sun Oil Co.*, 319 U.S. 315, 332–33, (1943), or alternatively stay the proceeding pursuant to the abstention doctrine in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976). The Court finds that *Burford* abstention is the better fit "given the potential public policy ramifications of the legal issues presented in this case." *Nissan N. Am., Inc. v. Jim M'Lady Oldsmobile, Inc.*, No. 07 C 6304, 2008 WL 4148528, at *2 (N.D. Ill. Aug. 29, 2008).

*Burford* abstention is appropriate in two circumstances: "(1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar'; or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) (*"NOPSI"*) (quoting *Colorado River*, 424 U.S. at 814).

4

The Court begins with an evaluation of the second circumstance where concurrent federal jurisdiction would "be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *NOPSI*, 491 U.S. at 361 (quoting *Colorado River*, 424 U.S. at 814). The Seventh Circuit held that "[t]he ability to point to a specialized [forum or] proceeding is a *prerequisite of, not a factor in*, the second type of *Burford* abstention." *Int'l Coll. of Surgeons v. City of Chicago*, 153 F.3d 356, 364 (7th Cir. 1998) (emphasis added) (quoting *Prop. & Cas. Ins. Ltd. v. Cent. Nat. Ins. Co. of Omaha*, 936 F.2d 319, 323 (7th Cir.1991)). The Act designates the Board as the initial place to which disputes are taken. 815 ILL. COMP. STAT. 710/16–18. However, the Act grants the Illinois Circuit Courts of Cook County and Sangamon County the power to review the Board's decisions. 815 ILL. COMP. STAT. 710/32. These courts of general jurisdiction arguably do not provide a "specialized forum or proceeding that offers the essential technical oversight needed for *Burford* abstention to apply." *Adkins v. VIM Recycling*, Inc., 644 F.3d 483, 505 n.11 (7th Cir. 2011); *Int'l Coll. of Surgeons*, 153 F.3d at 364 (*Burford* abstention was not appropriate because any court of general jurisdiction could review final administrative decisions); *see also Jim M'Lady Oldsmobile,* 2008 WL 4148528, at *3 (evaluating the first type of *Burford* abstention after determining "it is unclear whether the Cook and Sangaman County courts are sufficiently specialized to allow for *Burford* abstention" under the second type). Therefore, the Court turns its analysis to the first circumstance under *Burford*.

5

Abstention is also appropriate under *Burford* "when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar.'" *NOPSI*, 491 U.S. at 361 (quoting *Colorado River*, 424 U.S. at 814). The Court finds that *Burford* abstention under this circumstance is warranted.

First, the action involves a local public policy concern. *See Int'l Coll. of Surgeons*, 153 F.3d at 362 (finding land use a local public policy concern). The preamble to the Act declares that "the distribution and sale of vehicles within this State *vitally* affects the general economy of the State and the public interest, welfare, and safety." 815 ILL. COMP. STAT. 710/1.1 (emphasis added). The Illinois Supreme Court has found that the Act serves "legitimate public interests" by promoting fair dealing and protecting small businesses from harmful franchising practices. *Gen. Motors Corp. v. State Motor Vehicle Rev. Bd.*, 862 N.E.2d 209, 227 (Ill. 2007). Other courts in this district have recognized the state's interest in regulating the relationship between dealers and manufacturers. *See Jim M'Lady Oldsmobile*, 2008 WL 4148528, at *3 (concluding "the [Act] is evidence of an effort by the Illinois legislature to establish a coherent policy with respect to a matter of substantial public concern"); *Lou Bachrodt Chevrolet Co. v. Gen. Motors LLC*, No. 12 C 7998, 2013 WL 3754833, at *6 (N.D. Ill. July 15, 2013) (remanding to the Board because "the state's interests in regulating the relationships of automobile manufacturers and dealers" outweighed the federal interests in removal jurisdiction).

Second, the dispute involves the scope of MBUSA's ROFR, which is a contractual right impacted by unresolved state law questions. Contracts between MBUSA and JP Motors provide that JP Motors's right to transfer its Mercedes-Benz Assets is subject to MBUSA's ROFR. Compl. ¶ 13. The Act itself does not grant MBUSA a ROFR, but it requires that MBUSA's contractual ROFR be exercised in accordance with certain conditions. For example, the Act makes it unlawful for a manufacturer to exercise a ROFR unless the manufacturer:

> (A) notifies the dealer in writing that it intends to exercise its right to acquire the franchise not later than 60 days after the manufacturer's or distributor's receipt of a notice of the proposed transfer from the dealer and all information and documents reasonably and customarily required by the manufacturer or distributor supporting the proposed transfer;
>
> (B) pays to the dealer the same or greater consideration as the dealer has contracted to receive in connection with the proposed transfer or sale of all or substantially all of the dealership assets, stock, or other ownership interest …;
>
> (C) assumes all of the duties, obligations, and liabilities contained in the agreements that were to be assumed by the proposed transferee and with respect to which the manufacturer or distributor exercised the right of first refusal or other right to acquire the franchise[.]

815 ILL. COMP. STAT. 710/4(e). Additionally, the Act provides it is "unlawful [to] directly or indirectly to impose *unreasonable restrictions on the motor vehicle dealer or franchisee relative to transfer, sale, … right of first refusal to purchase*, option to purchase, compliance with subjective standards and assertion of legal or equitable rights. 815 ILL. COMP. STAT. 710/7 (emphasis added).

MBUSA attempts to divorce the local public policy concern and state law questions by asserting that this is merely a contract question because MBUSA has a contractual

7

ROFR. [55] at 2; [27-3] at 21. In support, MBUSA relies on *Ray v. Raj Bedi Revocable Tr.*, where the parties sought a declaration about their rights and obligations under buy-sell agreements. 611 F. Supp. 3d 567, 575 (N.D. Ind. 2020). In *Ray*, the court declined to abstain because it was "merely the interpretation of contracts between the parties." *Id.* at 576. But the court made that determination after it found "the claims … don't ostensibly implicate any of Indiana's corporate regulations." *Id.* at 575. As MBUSA acknowledges, statutory questions under the Act are implicated here. [55] at 2 ("the statutory questions are [whether] the Act prohibit[s] MBUSA from" (1) "exercising its ROFR"; (2) "exercising its ROFR in a package transaction"; and (3) "requiring a sale to be structured to preserve its ROFR"). The parties have not found any precedent interpreting the scope of a ROFR under the Act. Similar to *Jim M'Lady Oldsmobile*, "[t]he court would be rendering this decision without the benefit of input from the Board or Illinois state courts to help determine the number of car dealerships such a ruling might affect, the ramifications on Illinois commerce, or the impact on the public interest." 2008 WL 4148528, at *4. Thus, this action involves a local public policy concern and statutory questions of first impression.

MBUSA also argues that the Board will not necessarily resolve the issue. [55] at 4. The Court disagrees. The Board's hearing officer denied MBUSA's motion to dismiss for lack of jurisdiction. [57-1]. JP Motors's administrative protest before the Board alleges that MBUSA violated the Act by refusing to process the buyer's application before it received an apportionment of the purchase price. [18], Ex. 1. The Board's ruling will "contain a statement of the reasons for the decision and each issue

8

of fact or law necessary to the proposed decision." 815 ILL. COMP. STAT. 710/29(c). Consequently, the Board's decision will necessarily consider the issues that MBUSA seeks to have this Court resolve: whether MBUSA is entitled to an apportionment.

Finally, MBUSA contends that courts have not abstained in similar situations. [55] at 5. MBUSA relies on decisions that did not evaluate abstention under *Burford* or involve the Illinois Act. *See e.g., Mercedes-Benz USA, LLC v. Star Auto. Co.*, No. 3:11-CV-73 CAR, 2011 WL 2175037, at *2 (M.D. Ga. June 3, 2011) (preliminary injunction and Georgia law); *Volvo Grp. N. Am., LLC v. Truck Enterprises, Inc.*, No. 7:18-CV-00043-EKD, 2018 WL 4704047, at *4–6 (W.D. Va. Sept. 30, 2018) (preliminary injunction and Virginia law); *Audi of Am., Inc. v. Bronsberg & Hughes Pontiac, Inc.*, No. 3:16-CV-2470, 2017 WL 11573352, at *1 (M.D. Pa. Jan. 18, 2017) (preliminary injunction and Pennsylvania law). While the issue under the Act is different, the court in *Jim M'Lady Oldsmobile* abstained from declaratory claims brought by a manufacturer against a dealer that involved questions of first impression that were also part of a protest pending before the Board. 2008 WL 4148528, at *6. The Court is persuaded by the reasoning in *Jim M'Lady Oldsmobile*: abstaining under *Burford* is necessary because MBUSA is asking the court to "attribute a given meaning to the state statute" and "delay, misunderstanding of local law, and needless federal conflict with the State policy are the inevitable product of this double system of review." 2008 WL 4148528, at *5 (quoting *Burford*, 319 U.S. at 327 (lamenting the legislative confusion engendered by a federal court statutory interpretation that was later contradicted by a state appellate court)).

## IV. Conclusion

For the reasons stated above, JP Motors's motion to dismiss [17] is granted and MBUSA's motion for preliminary injunction [8] is denied as moot. This Order is stayed through January 12, 2024. Furthermore, all contractual and statutory deadlines of MBUSA under its Dealer Agreements with JP Motors and the Illinois Motor Vehicle Franchise Act, 815 ILCS 710/1 *et seq.*, to approve, disapprove, or exercise rights of first refusal over the proposed sale of JP Motors's Mercedes-Benz dealership assets are stayed through January 12, 2024.

E N T E R:

Dated: November 28, 2023

MARY M. ROWLAND
United States District Judge