# EXHIBIT F

| | |
|---|---|
| **From:** | Eric P. VanderPloeg |
| **To:** | Mitchell, Nolan J.; Kalmanson, Melanie C. (TPA x5279); Harper, Charles E. (CHI x6076); Oyler, Randall L. (CHI x6070); Mykulak, George W.; mkuchler@rklawoffices.com |
| **Cc:** | Ira M. Levin; Chase E. Bullock; Mark M. Lyman; Steve Varhola |
| **Subject:** | Complainant"s Motion for Leave to Amend Protest - JP Motors v. MBUSA (MVRB 339-23) |
| **Date:** | Friday, December 29, 2023 6:07:43 PM |
| **Attachments:** | image003.png |
| | image004.png |
| | 2023-12-29 Motion for Leave to File Amended Protest (Including Exhibits).pdf |

MBUSA Counsel and Hearing Officer Kuchler:

Attached is a copy of Complainant's Motion for Leave to File Amended Protest, which we are filing with the Motor Vehicle Review Board. If there is an objection to the motion, or if there are any questions from the Hearing Officer, we would like to find a date after the New Year to present the motion.  Please let us know if there is an objection, and if so, if there is a good date in the next two weeks that would work to present the motion.

Thank you, and happy new year to everyone.

### Eric P. VanderPloeg

Burke, Warren, MacKay & Serritella, P.C.
330 N Wabash Ave, 21st Floor | Chicago, IL 60611
**P** 312-840-7129 | **F** 312-840-7900
EVanderPloeg@burkelaw.com | www.burkelaw.com [burkelaw.com]
Profile [burkelaw.com] | vCard [burkelaw.com]



*Confidentiality Note: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information.  Any unauthorized review, use, disclosure or distribution is strictly prohibited.  If you are not the intended recipient, contact the sender via reply email and destroy all copies of the original message.*

**STATE OF ILLINOIS**
**MOTOR VEHICLE REVIEW BOARD**

JP MOTORS, INC.,

              Complainant,

       v.

MERCEDES-BENZ USA, LLC,

              Respondent.

MVRB No. 339-23

Hearing Officer Mark Kuchler, Esq.

**COMPLAINANT'S MOTION FOR LEAVE TO FILE**
**AMENDED PROTEST**

Complainant JP Motors, Inc. ("Complainant"), by and through their undersigned counsel, move for leave to file its Amended Notice of Protest (attached hereto in clean format as Exhibit 1, and in redline as Exhibit 2) against Mercedes-Benz USA, LLC ("MBUSA"), and, in support of this Motion, Complainant states as follows:

1.      Section 2-616(a) of the Illinois Code of Civil Procedure and the common law provide that amendments to complaints should be liberally allowed. 735 ILCS 5/2-616(a); *McDonald v. Lipov*, 2014 IL App (2d) 130401, ¶ 47. In addition, "[a] pleading may be amended at any time, before or after judgment, to conform the pleadings to the proofs, upon terms as to costs and continuance that may be just." 735 ILCS 5/2-616(c).

2.      During discovery in these proceedings, MBUSA produced documents related to Complainant's dealer agreements. MBUSA first produced copies of these records on or about December 1, 2023. On December 18, 2023, Complainant took the deposition of MBUSA employee, and MBUSA's Rule 206(a)(1) Corporate Representative, Hannah Wilder in Atlanta, Georgia. During her deposition, Ms. Wilder testified that Complainant's written dealer agreement with MBUSA expired many years ago, in 2012, and was never renewed or extended in writing.

1

3.      Complainant filed its original Protest in the above-referenced matter on April 14, 2023 asserting violations of the Illinois Motor Vehicle Franchise Act ("IMVFA") arising from MBUSA's demand for an apportionment of the purchase price for the sale of Complainants' dealership in Peru, Illinois.  Just a few days prior to filing the protest with the Board, on April 11, 2023, MBUSA filed a lawsuit in the Northern District of Illinois, naming Complainant as a defendant and seeking a declaration that Complainant was required by both under its dealer agreement and also the IMVFA to provide MBUSA with an apportionment of the purchase price. In the federal lawsuit, MBUSA attached to its complaint a copy of Complainant's purported written dealer agreement with MBUSA from which its right of first refusal sprang. Complainant filed its protest with the Board and attached a copy of the same dealer agreement that had been attached to MBUSA's Federal Complaint.

4.      Through discovery in this matter, however, it has become clear that the dealer agreement that was attached to MBUSA's Federal Complaint was not the operative dealer agreement between Complainant and MBUSA, as that written agreement had actually expired over 10 years ago. In light of the facts adduced during discovery, Complainant now wishes to amend its protest as to clarify the status of its franchise arrangement with MBUSA, and conform the allegations to the proofs that have been adduced during discovery.

5.      Granting this motion to amend will not result in prejudice to MBUSA. As the documents produced by MBUSA and the testimony of Ms. Wilder confirm, MBUSA has long been aware of the contractual status of Complainant's dealer agreement, and MBUSA likely took that issue into account even prior to these facts being disclosed during discovery. Moreover, neither the deposition of Mr. Leydon, JP Motors president and the dealer-principal for the

franchise, or John Crane, the manager of the Laspo Motors, LLC, the buyer of the JP Motors assets, has yet to take place, The proposed amendment simply conforms the pleadings to the proofs.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, Complainant respectfully request that this tribunal grant it leave to file its Amended Notice of Protest, in the form attached hereto as Exhibit 1.

Dated: December 29, 2023                    Respectfully submitted,

**JP MOTORS, INC.**

By:        */s/ Ira M. Levin*
                One of Its Attorneys

Mark M. Lyman
Steve M. Varhola
Lyman Law Firm, LLC
227 West Monroe Street, Suite 2650
Chicago, Illinois 60606
mark@lymanlawus.com
steve@lymanlawus.com

*and*

Ira M. Levin (ilevin@burkelaw.com)
Eric P. Vanderploeg (evanderploeg@burkelaw.com)
Chase E. Bullock (cbullock@burkelaw.com)
BURKE, WARREN, MACKAY & SERRITELLA, P.C.
330 North Wabash Avenue, 21st Floor
Chicago, Illinois 60611-3607
Telephone:      (312) 840-7000
Facsimile:      (312) 840-7900

## **CERTIFICATE OF SERVICE**

Eric P. VanderPloeg, an attorney, certifies that on December 29, 2023 he caused a copy of the foregoing Complainant's Motion for Leave to File Amended Protest to be served upon:

George W. Mykulak
(george.mykulak@quarles.com)
Nolan J. Mitchell
(nolan.mitchell@quarles.com)
Melanie Kalmanson
(Melanie.Kalmanson@quarles.com)
QUARLES & BRADY LLP
1701 Pennsylvania Avenue NW
Suite. 700
Washington, D.C. 20006

Randall L. Oyler
(randall.oyler@quarles.com)
Charles E. Harper
(charles.harper@quarles.com)
QUARLES & BRADY LLP
300 N. LaSalle Street
Suite 4000
Chicago, Illinois 60654
*Counsel for Mercedes-Benz USA, LLC*

*/s/Eric P. VanderPloeg*
Eric P. VanderPloeg

# EXHIBIT 1

**STATE OF ILLINOIS**
**MOTOR VEHICLE REVIEW BOARD**

JP MOTORS, INC.,

          Complainant,

        v.

MERCEDES-BENZ USA, LLC,

          Respondent.

MVRB No. 339-23

Hearing Officer Mark Kuchler, Esq.

## COMPLAINANT'S AMENDED PROTEST (FACTS SUPPORTING VIOLATION)[1]

Complainant, JP Motors, Inc. ("JP Motors"), is a duly licensed motor vehicle dealer in Peru, Illinois, and owns and operates Mercedes-Benz, Chevrolet and Nissan ("Dealership Franchises") dealerships in a single dealership facility located at 3675-3701 Frontage Road, Peru, Illinois 61354 ("Dealership Facility"). Pictures of the Dealership Facility are attached as **Group Exhibit 1**. The Dealership Facility was constructed more than 40 years ago as a multi-franchise dealership. All of the Dealership Franchises have been operating at the Dealership Facility for approximately 31 years. JP Motors (and its predecessor entity) has been the Mercedes-Benz, USA, LLC ("MBUSA") dealer at the Dealership Facility for over 25 years.

JP Motors last entered into a written Mercedes-Benz Passenger Car Dealer Agreement and a Mercedes-Benz Light Truck Dealer Agreement in 2012 ("MB Dealer Agreements"). The MB Dealer Agreements expired by their terms in or about the end of 2012. Since that time, JP Motors has not entered into a new written agreement with MBUSA. JP Motors currently operates its dealership pursuant to an arrangement with MBUSA to purchase, sell and service MBUSA vehicles and perform warranty work from the Dealership Facility. Under the Illinois Motor

---

[1]     This document amends the Facts Supporting Violation attached to Complainant's original April 14, 2023 Notice of Protest filed in this cause.

Vehicle Franchise Act, a "franchise" is any "oral or written arrangement for a definite or indefinite period in which a manufacturer, distributor or wholesaler grants to a motor vehicle dealer a license to use a trade name, service mark, or related characteristic, and in which there is a community of interest in the marketing of motor vehicles or services related thereto at wholesale, retail, leasing or otherwise." 815 ILCS 710/2(i).

While there are some separate retail entrances and other interior separations, much of the dealership facilities are contiguous, open and shared by the various Dealership Franchises. Further, service technicians work on different vehicle brands and the service area, parts storage area and offices are shared and intertwined. Dealer personnel, including retail and support staff, are shared or have duties that serve all of the Dealership Franchises permitting the dealer to share expenses at a significant savings, which would be lost if the Dealership Franchises were operated independently.

The dealerships being operated at the Dealership Facility are known in the industry as a "dual" facility since they contain more than one line-make. Dual facilities are particularly suitable for downstate markets, like Peru, where demand and volume for a particular brand may not support a single, exclusive dealership facility. JP Motors does not have an agreement with any of the manufacturers to operate its Dealership Franchises in separate facilities or to keep the Dealership Facility exclusive to any specific line-make.

On February 1, 2023, JP Motors entered into an Asset Purchase Agreement ("APA") with Laspo Motors, LLC, an Illinois limited liability company ("Buyer"), to acquire its Mercedes-Benz, Chevrolet, and Nissan assets at the Dealership Facility. Commencing on February 15, 2023 and continuing to the present, Buyer submitted to MBUSA, which MBUSA accepted, information and documentation requested and required by it to process Buyer's dealer application. The APA

provided a single purchase price for all of the Dealership Franchises. The APA also requires the Buyer to purchase the Dealership Facility pursuant to a Real Estate Purchase and Sale Agreement with one unallocated purchase price.

On February 1, 2023, the APA was submitted to MBUSA for approval. On February 8, 2023 and again on March 28, 2023, MBUSA sent letters requesting an allocation of the purchase price under the APA related to JP Motors' Mercedes-Benz franchise so that MBUSA could evaluate whether to exercise its right of first refusal. **Group Exhibit 2**. MBUSA claimed that such an allocation was required by Section IX.B. of the MB Dealer Agreements; however, MBUSA did not mention that the MB Dealer Agreements had since expired. Regardless, even if they were not expired, Section IX.B. of the MB Dealer Agreements does not address or require the allocation of purchase prices or goodwill in an asset purchase agreement. **Exhibit 3,** at Section IX.B. On April 3, 2023, counsel for JP Motors responded to MBUSA's request for an allocation noting that the APA purchase price was negotiated as a single unallocated amount with consideration being given to the ability to continue to operate all of the brands at the Dealership Facility. It was noted that the Dealership Franchises and the Dealership Facility were being purchased together, as a single going concern, and not separately so that the purchaser could share certain costs and enjoy the economies of scale. **Exhibit 4**.

MBUSA is the *only* manufacturer of the three line-makes to insist that an allocation of the purchase price in the APA be made. MBUSA's refusal to proceed with the approval process of the Buyer's application has delayed the transaction and resulted in losses and damages to JP Motors.

In response to JP Motors' letter advising that an allocation of the APA purchase price was not required or possible given the nature of the transaction, MBUSA, with the clear attempt to

avoid the Illinois Motor Vehicle Review Board ("Board") deciding this dispute under the IMVFA (defined below) and to halt processing Buyer's application any further, filed an action in the United States District Court for the Eastern District of Illinois (*Mercedes–Benz USA v. JP Motors, Inc.*, Case No. 1:23-cv-02281) alleging that JP Motors had materially breached the MB Dealer Agreements and violated the IMVFA by not allocating the purchase price in the APA. (Complaint was filed under seal).

Ultimately, this dispute involves the interpretation and application of a statute, the IMVFA (defined below), that is squarely within this Board's jurisdiction, and should be determined by the Board in the first instance. *See Nissan North America, Inc. v. Jim M'Lady Oldsmobile, Inc.,* No. 07 C 6304, 2008 U.S. Dist. LEXIS 84700, at *9 (N.D. Ill. Aug. 29, 2008) (applying *Burford* abstention to federal action that involved the same issue as action pending before the MVRB); *see also Lou Bachrodt Chevrolet Co. v. GM LLC*, No. 12 C 7998, 2013 U.S. Dist. LEXIS 98870, at *15 (N.D. Ill. July 15, 2013) (remanding action to the MVRB after holding that state interest in interpretation of IMVFA "substantially outweighed" federal interest in diversity jurisdiction). The federal court has since dismissed MBUSA's complaint under the doctrine of abstention in deference to these proceedings before the Illinois Motor Vehicle Review Board.

## APPLICABLE STATUTES

JP Motors is an Illinois motor vehicle dealer. MBUSA is an Illinois franchiser. JP Motors is a franchise subject to the Illinois Motor Vehicle Franchise Act ("IMVFA").

Section 4 of the IMVFA prohibits certain unfair practices by motor vehicle franchisers. Among them, **Section 4(e)(6) of the IMVFA** makes it unlawful for a manufacturer:

> to refuse to give effect to or prevent or attempt to prevent by contract or otherwise any motor vehicle dealer or any officer, partner or stockholder of any motor vehicle dealer from selling or transferring any part of the interest of any of them to any other person or persons or party or parties unless such sale or transfer is to a

transferee who would not otherwise qualify for a new motor vehicle dealers license under the Illinois Vehicle Code[2] or unless the franchiser, having the burden of proof, proves that such sale or transfer is to a person or party who is not of good moral character or does not meet the franchiser's existing and reasonable capital standards and, with consideration given to the volume of sales and service of the dealership, uniformly applied minimum business experience standards in the market area.

**Section 4(e)(11) of the IMVFA** makes it unlawful for a manufacturer:

to prevent or refuse to approve a proposal to establish a successor franchise at a location previously approved by the franchiser when submitted with the voluntary termination by the existing franchisee unless the successor franchisee would not otherwise qualify for a new motor vehicle dealer's license under the Illinois Vehicle Code or unless the franchiser, having the burden of proof, proves that such proposed successor is not of good moral character or does not meet the franchiser's existing and reasonable capital standards and, with consideration given to the volume of sales and service of the dealership, uniformly applied minimum business experience standards in the market area.

**Section 4(e)(14) of the IMVFA** makes it unlawful for a manufacturer:

(14) to exercise a right of first refusal or other right to acquire a franchise from a dealer, unless the manufacturer. . . :

(B) pays to the dealer the same or greater consideration as the dealer has contracted to receive in connection with the proposed transfer or sale of all or substantially all of the dealership assets, stock, or other ownership interest, including the purchase or lease of all real property, leasehold, or improvements related to the transfer or sale of the dealership. Upon exercise of the right of first refusal or such other right, the manufacturer or distributor shall have the right to assign the lease or to convey the real property;

(C) assumes all of the duties, obligations, and liabilities contained in the agreements that were to be assumed by the proposed transferee and with respect to which the manufacturer or distributor exercised the right of first refusal or other right to acquire the franchise;

**Section 7 of the IMVFA** makes it unlawful for a manufacturer:

directly or indirectly to impose unreasonable restrictions on the motor vehicle dealer or franchisee relative to transfer, sale, right to renew, termination, discipline, noncompetition covenants, site-control (whether by sublease, collateral pledge of lease, or otherwise), right of first refusal to purchase, option to purchase, compliance with subjective standards and assertion of legal or equitable rights.

Finally, **Section 4(b) of the IMVFA** provides:

It shall be deemed a violation for any manufacturer, factory branch, factory representative, distributor or wholesaler, distributor branch, distributor representative or motor vehicle dealer to engage in any action with respect to a franchise which is arbitrary, in bad faith or unconscionable and which causes damage to any of the parties or to the public.

## **STATUTORY VIOLATIONS**

Under Section 4(e)(14) and the other above-cited provisions of the IMVFA, a motor vehicle manufacturer's right of first refusal is not absolute. In fact, it violates Illinois law *unless* the manufacturer is in a position to step into the shoes of the purchaser and take the entire deal as it comes to the manufacturer, including all of the buyer's other obligations under the APA and the related real estate. If the manufacturer cannot do so, then it cannot exercise a lawful right of first refusal over the franchised assets, regardless of what the franchise agreement states. The IMVFA is just as applicable to rights of first refusals as it is to any other issue covered by the written franchise agreement, including terminations, relocations, dealer successions, and warranty procedures. All of these matters are subject to the IMVFA, which the Illinois General Assembly intended to protect Illinois dealers from harmful franchising practices, such as those here.

MBUSA's refusal to proceed with processing the Buyer's dealer application and MBUSA's insistence that the parties rewrite their agreement (i.e., allocate the purchase price) to facilitate a purported right of first refusal, violates the IMVFA in several respects. MBUSA's actions, if validly exercised, would effectively undual JP Motor's dealership, which has operated in its present form and location for decades, devalue its other dealership assets, jeopardize the sale to the Buyer, and threaten the viability of JP Motors' remaining dealership operations, its investment in its facility, and the jobs of its employees.

*First.* MBUSA's refusal to continue to process the Buyer's dealer application, which is delaying the sale of JP Motor's franchises, is done without good cause and violates Section 4(e)(6),

or alternatively, Section 4(e)(11).  It also constitutes an unreasonable restriction relative to the sale of JP Motors' dealership in violation of Section 7.

_Second_, MBUSA is attempting to assert a contractual right of first refusal that it does not even have with JP Motors, because any such right appeared in a written agreement that has since expired. Since that expiration, the course of dealing and arrangement between MBUSA and JP Motors to operate as a franchised MBUSA motor vehicle dealer, which is protected by other sections of the IMVFA, does not include or give MBUSA a right of first refusal over JP Motor's dealership.

_Third_, MBUSA's demand that the parties allocate the purchase price, which is apparently tied to a premise that MBUSA could exercise a right of first refusal for less than all of the assets that JP Motors is selling to Buyer, violates Section 4(e)(14), which contains no requirement that a purchase price be allocated, much less that a manufacturer could refuse to accept the transaction as presented, or exercise a right of first refusal for less than all of the assets being conveyed.   Such a requirement also constitutes an unreasonable restriction relative to JP Motors' right to sell its dealership in violation of Section 7.

_Fourth_even assuming, arguendo, that MBUSA has a right of first refusal under the MB Dealer Agreements for these transactions, there is nothing therein that requires JP Motors to allocate a purchase price or otherwise alter the agreement that JP Motors entered into with the Buyer.  Thus, putting aside how Section 4(e)(14) limits MBUSA's contractual rights, MBUSA is actually attempting to assert contractual rights that it does not have, resulting in harm and damages to JP Motors.  MBUSA's violations of the IMVFA by asserting contract rights that it does not have under the MB Dealer Agreements and taking steps to try to frustrate the transactions in the APA are egregious, done in bad faith, and violates Section 4(b).

Accordingly, JP Motors, Inc. requests a hearing on its protest, a declaration that Mercedes-Benz USA, LLC has violated Sections 4(e)(6), 4(e)(11), 4(e)(14), 7 and 4(b) of the IMVFA, and an order requiring Mercedes-Benz USA, LLC to approve the sale from JP Motors to the Buyer. In addition, pursuant to Section 13 of the IMVFA, Complainant seeks an award of its attorneys' fees, experts' fees, and costs. 815 ILCS 710/13.

Dated: December 29, 2023                    Respectfully submitted,

                                            **JP MOTORS, INC.**

                                            By: _____*/s/Ira M. Levin*_____
                                                    One of Its Attorneys

Mark M. Lyman
Steve M. Varhola
Lyman Law Firm, LLC
227 West Monroe Street, Suite 2650
Chicago, Illinois 60606
mark@lymanlawus.com
steve@lymanlawus.com

*and*

Ira M. Levin (ilevin@burkelaw.com)
Eric P. VanderPloeg (evanderploeg@burkelaw.com)
Chase E. Bullock (cbullock@burkelaw.com)
BURKE, WARREN, MACKAY & SERRITELLA, P.C.
330 North Wabash Avenue, 21st Floor
Chicago, Illinois 60611-3607
Telephone:     (312) 840-7000
Facsimile:     (312) 840-7900

8

# GROUP EXHIBIT 1

4/13/23, 5:41 AM                                        JP Motors - Google Maps

**Google** Maps     JP Motors



Imagery ©2023 CNES / Airbus, Maxar Technologies, U.S. Geological Survey, USDA/FPAC/GEO, Map data ©2023     100 ft

4/13/23, 5:52 AM                                      3537 Frontage Rd - Google Maps

**Google** Maps    3537 Frontage Rd



Image capture: May 2018     © 2023 Google



4/13/23, 5:45 AM

3537 Frontage Rd - Google Maps

Google Maps    3537 Frontage Rd



Image capture: May 2018    © 2023 Google



# GROUP EXHIBIT 2



Mercedes-Benz USA, LLC

**VIA ELECTRONIC DELIVERY**

February 8, 2023

Joseph M. Leydon
JP Motors, Inc.
3675 Frontage Road
Peru, IL 61354
lynnjp@aol.com

RE: LETTER REQUESTING APPORTIONMENT

Dear Mr. Leyden:

We are writing on behalf of Mercedes-Benz USA, LLC ("**MBUSA**") regarding the proposed transfer of ownership interests in its MBUSA dealership assets between JP Motors, Inc. ("**Dealer**") and LASPO Motors, LLC ("**Proposed Buyer**"), as set forth in the Asset Purchase Agreement dated February 1, 2023 (the "**APA**"). We would like to address time-sensitive issues relating to the APA.

As you know, the APA not only provides for the purchase and sale of certain assets used in Dealer's Mercedes-Benz operations, but also provides for the purchase and sale of other assets used in Dealer's other line-make operations, including its separate Chevrolet and Nissan businesses. The APA provides that the goodwill for all Dealer's line-make operations is $6,500,000, but does not apportion or segregate the part of the proposed transaction that only constitutes the Mercedes-Benz brand.

Under Section IX.B. of the Mercedes-Benz Passenger Car and Light Truck Dealer Agreements, dated January 1, 2012 (collectively, the "**Dealer Agreements**") and 815 ILL. COMP. STAT. 710/4(e)(6)(A) (the "**Statute**"), MBUSA has a right of first refusal in connection with the MBUSA Transfer. However, MBUSA cannot evaluate or exercise its contractual and statutory rights of first refusal without the APA being apportioned in a manner that specifically describes the terms of the proposed Transfer. Dealer's submission of the APA without any such apportionment, therefore, is a material breach of the Dealer Agreements and a violation of the Statute.

For this reason, we request that Dealer provide (i) a good faith breakdown of the purchase price payable under the APA that is attributable to the MBUSA Transfer, and (ii) a good faith breakdown of the other terms of the APA that are attributable to the MBUSA Transfer. Alternatively, in the event that Dealer is either unable or unwilling to provide such information in compliance with the Dealer Agreements and the Statute, we request that Dealer withdraw the APA.

Alternatively, in the event that the Dealer is either unable or unwilling to provide such information in compliance with the Dealer Agreements and the Statute, we request that Dealer withdraw the APA.

We also request that Dealer, pursuant to the Statute, provide an accounting of the reasonable, actual expenses incurred to date by the Proposed Buyer in negotiating and implementing the MBUSA Transfer. Such reasonable expenses may include attorneys' fees, which do not exceed the usual, customary, and reasonable fees charged for similar work done for other clients.



Mercedes-Benz USA, LLC

Time is of the essence, as under both the Dealer Agreement and the Statute, MBUSA has a limited amount of time in which to evaluate the proposed transfer and, if desired, to exercise its rights of first refusal. We therefore request that you provide us with the information described above, or alternatively that you notify us of your withdrawal of the APA, as soon as practicable but in all events within **five (5) business days of receipt of this letter**.

Please take note that by making the requests set forth in this letter, MBUSA does not waive or forego, but rather expressly preserves, any and all of its contractual and statutory rights, relating to the APA and otherwise to the proposed transaction between Dealer and the Proposed Buyer.

Sincerely,

*Hannah J. Wilder*

Hannah J. Wilder
Department Manager of Network Operations
Network Development
**MERCEDES-BENZ USA, LLC.**

cc: LASP Land Partners LLC, Attn.: John Crane, cranezoo@aol.com
Lyman Law Firm, Attn.: Mark M. Lyman, mark@lymanlawus.com
Burke Warren MacKay & Serritella, Attn.: Ira M. Levin, ilevin@burkelaw.com; Attn: Eric P. VanderPloeg: evanderploeg@burkelaw.com; Attn: Bradley M. Ader Email: bader@burkelaw.com



Mercedes-Benz USA, LLC

**VIA ELECTRONIC DELIVERY**

March 28, 2023

Joseph M. Leydon
JP Motors, Inc.
3675 Frontage Road
Peru, IL 61354
lynnjp@aol.com

RE:   <u>**FOLLOW-UP TO LETTER REQUESTING APPORTIONMENT UNDER ASSET PURCHASE
      AGREEMENT**</u>

Dear Mr. Leydon:

We are writing on behalf of Mercedes-Benz USA, LLC (**"MBUSA"**) with respect to the asset and goodwill apportionment of the proposed sale and transfer of ownership interests in MBUSA dealership assets between JP Motors, Inc. (the **"Dealer"**), as seller, and LASPO Motors, LLC (the **"Proposed Buyer"**), as buyer, as set forth in the Asset Purchase Agreement dated February 1, 2023 (the **"APA"**).

Pursuant to that certain Letter Requesting Apportionment under Asset Purchase Agreement dated as of February 1, 2023, we asked that Dealer provide MBUSA with: **(i)** a good faith breakdown of the purchase price payable under the APA that is attributable to the Mercedes-Benz brand; **(ii)** identification of the assets being sold under the APA that relate to the Mercedes-Benz brand; and **(iii)** identification and a good faith breakdown of all the other terms of the APA that are attributable to the Mercedes-Benz brand.

To date, we have not received the above items.

As previously stated, under Section IX.B. of the Mercedes-Benz Passenger Car Dealer and Light Truck Dealer Agreements (collectively, the **"Dealer Agreements"**) and 815 ILL. COMP. STAT. 710/4(G) (the **"Statute"**), MBUSA has a right of first refusal in connection with the proposed transaction. However, MBUSA cannot evaluate or exercise its contractual and statutory rights of first refusal without the APA being apportioned in a manner that specifically describes the terms of the proposed transaction. Dealer's submission of the APA without any such apportionment, therefore, is a material breach of the Dealer Agreements and a violation of the Statute.

Without the apportionment, MBUSA cannot complete its review of the proposed transaction and its evaluation of its rights under Dealer's Mercedes-Benz Dealer Agreements. In this regard, MBUSA continues to expressly reserve all of its contractual and statutory rights relating to the APA and the proposed transaction.



Mercedes-Benz USA, LLC

We look forward to receiving the requested explanation and documents. *Please provide us with this information by no later than close of business on **April 6, 2023***. Your failure to provide the requested breakout by the deadline shall be construed as your refusal to do so.

Sincerely,

Hannah J. Wilder

Hannah J. Wilder
Department Manager of Network Operations
Network Development
**MERCEDES-BENZ USA, LLC.**

cc:     LASP Land Partners LLC, Attn.: John Crane, cranezoo@aol.com
        Lyman Law Firm, Attn.: Mark M. Lyman, mark@lymanlawus.com
        Burke Warren MacKay & Serritella, Attn.: Ira M. Levin, ilevin@burkelaw.com; Attn: Eric P.
        VanderPloeg: evanderploeg@burkelaw.com; Attn: Bradley M. Ader Email: bader@burkelaw.com

# EXHIBIT 3

# MERCEDES-BENZ USA, LLC

**Mercedes-Benz
Passenger Car Dealer Agreement**

## Table of Contents

| | | Page |
|---|---|---|
| **DEALER AGREEMENT** | | |
| | MERCEDES-BENZ STATEMENT OF COMMITMENT | (i) |
| A. | APPOINTMENT OF DEALER | (ii) |
| B. | TERM | (ii) |
| C. | ADDITIONAL PROVISIONS | (ii) |
| D. | DEALER OWNERSHIP | (ii) |
| E. | DEALER MANAGEMENT | (iii) |
| F. | DEALERSHIP FACILITIES | (iii) |
| G. | MERCEDES-BENZ DEALER BOARD | (iv) |
| H. | MODIFICATION OF AGREEMENT | (iv) |
| I. | EXECUTION OF AGREEMENT | (iv) |
| J. | MUTUAL RELEASE | (iv) |
| K. | CERTIFICATION | (iv) |
| | FINAL PARAGRAPH | (v) |
| **STANDARD PROVISIONS** | | |
| I. | ACQUISITION, DELIVERY AND INVENTORY OF MERCEDES-BENZ PASSENGER CAR PRODUCTS | 1 |
| A. | PRICES AND TERMS OF SALE | 1 |
| B. | AVAILABILITY AND ALLOCATION OF PRODUCTS | 1 |
| C. | DELIVERY OF PRODUCTS | 1 |
| D. | PASSAGE OF TITLE | 1 |
| E. | RISK OF DAMAGE OR LOSS | 2 |
| F. | DELAY OR FAILURE OF DELIVERY | 2 |
| G. | DIVERSION AND STORAGE CHARGES | 2 |
| H. | SECURITY INTEREST | 2 |
| 1. | Grant of Security Interest | 2 |
| 2. | Default in Payment | 3 |
| 3. | Assembly of Collateral, Payment of Costs and Notices | 3 |
| 4. | Recording and Further Assurances | 3 |
| 5. | Records and Schedules of Inventory | 3 |

|  |  |  | **Page** |
|---|---|---|---|
| I. | | CHANGES OF DESIGN, SPECIFICATIONS OR OPTIONS | 4 |
| J. | | DISCONTINUANCE OF MANUFACTURE OR IMPORTATION | 4 |
| K. | | MINIMUM VEHICLE INVENTORIES | 4 |
| L. | | PRODUCT MODIFICATIONS | 4 |
| II. | | DEALER'S MARKETING AND SALES OF MERCEDES-BENZ PASSENGER CAR PRODUCTS | 4 |
| | A. | DEALER'S GENERAL RESPONSIBILITIES | 4 |
| | B. | EXPORT POLICY | 5 |
| | C. | MERCEDES-BENZ DEALER ASSOCIATION | 5 |
| | D. | PRE-OWNED VEHICLES | 6 |
| | E. | AREA OF INFLUENCE | 6 |
| | F. | EVALUATION OF DEALER'S MARKETING AND SALES PERFORMANCE | 6 |
| III. | | DEALER'S SERVICE OBLIGATIONS | 6 |
| | A. | CUSTOMER SERVICE STANDARDS | 6 |
| | B. | DEALER'S SPECIFIC SERVICE OBLIGATIONS | 7 |
| | | 1. Pre-Delivery Inspections and Service | 7 |
| | | 2. Warranty Repairs and Policy Service | 7 |
| | | 3. Service/Recall Campaign Inspections and Corrections | 8 |
| | | 4. Roadside Assistance Program | 8 |
| | C. | USE OF PARTS AND ACCESSORIES IN NON-WARRANTY SERVICE | 8 |
| | | 1. Quality Standards | 8 |
| | | 2. Dealer's Disclosures as to Use of and Warranties for Non-Genuine Parts and Accessories | 8 |
| | D. | COMPLIANCE WITH SAFETY AND EMISSION CONTROL REQUIREMENTS | 9 |
| | E. | COMPLIANCE WITH CONSUMER PROTECTION STATUTES, RULES AND REGULATIONS | 10 |
| IV. | | DEALER'S SERVICE AND PARTS ORGANIZATION | 10 |
| | A. | ORGANIZATION AND STANDARDS | 10 |
| | B. | SERVICE EQUIPMENT AND SPECIAL TOOLS | 10 |

MB 902 (1/12)

|  |  |  |  | **Page** |
|---|---|---|---|---|
|  |  | 1. | Mercedes-Benz Special Tools | 11 |
|  |  | 2. | Mercedes-Benz Service Equipment | 11 |
|  | C. |  | PARTS STOCKING AND SERVICE LEVELS | 11 |
|  | D. |  | AFTER HOURS DELIVERY | 11 |
|  | E. |  | ASSISTANCE PROVIDED BY MBUSA | 12 |
|  |  | 1. | Service Manuals and Materials | 12 |
|  |  | 2. | Field Personnel Assistance | 12 |
|  | F. |  | EVALUATION OF DEALER'S SERVICE AND PARTS PERFORMANCE | 12 |
|  | G. |  | ADDITIONAL FACILITIES OR LOCATIONS | 12 |
| V. |  |  | CUSTOMER SATISFACTION RESPONSIBILITIES | 13 |
|  | A. |  | DEALER'S CUSTOMER SATISFACTION OBLIGATIONS | 13 |
|  |  | 1. | Dealer's Customer Satisfaction Plan | 13 |
|  |  | 2. | Employee Training | 13 |
|  |  | 3. | Customer Assistance Response System | 13 |
|  | B. |  | EVALUATION OF DEALER'S CUSTOMER SATISFACTION PERFORMANCE | 13 |
| VI. |  |  | DEALERSHIP FACILITIES AND IDENTIFICATION | 14 |
|  | A. |  | LOCATION AND FACILITIES | 14 |
|  | B. |  | CHANGES AND ADDITIONS | 14 |
|  | C. |  | DEALER'S OPERATING HOURS | 15 |
|  | D. |  | CORPORATE IDENTITY | 15 |
|  | E. |  | EVALUATION OF DEALERSHIP FACILITIES | 15 |
|  | F. |  | OWNERSHIP AND USE OF MERCEDES-BENZ MARKS | 15 |
|  |  | 1. | Validity and Exclusive Ownership of Mercedes-Benz Marks | 15 |
|  |  | 2. | Use by Dealer | 16 |
|  |  | 3. | Discontinuance of Use | 16 |
|  |  | 4. | Enforcement | 16 |
| VII. |  |  | WARRANTIES | 17 |

|  |  |  | **Page** |
|---|---|---|---|
| VIII. | CAPITAL, CREDIT, RECORDS AND UNIFORM SYSTEMS | | 17 |
| | A. | NET WORKING CAPITAL | 17 |
| | B. | FLOORING AND LINES OF CREDIT | 17 |
| | C. | PAYMENT TERMS | 18 |
| | D. | UNIFORM ACCOUNTING SYSTEM | 18 |
| | E. | RECORDS MAINTENANCE | 18 |
| | F. | EXAMINATION OF DEALERSHIP ACCOUNTS AND RECORDS | 18 |
| | G. | TAXES | 19 |
| | H. | CONFIDENTIALITY | 19 |
| | I. | MERCEDES-BENZ DEALER COMMUNICATIONS SYSTEM, PROPRIETARY MANUFACTURER SYSTEMS, AND INTERNET CONNECTIVITY | 19 |
| | J. | SALES AND SERVICE REPORTING | 19 |
| IX. | TRANSFERS | | 20 |
| | A. | SALE OF ASSETS OR OWNERSHIP INTEREST | 20 |
| | B. | RIGHT OF FIRST REFUSAL OR OPTION TO PURCHASE | 21 |
| | | 1. Rights Granted | 21 |
| | | 2. Exercise of MBUSA's Rights | 22 |
| | | 3. Right of First Refusal | 22 |
| | | 4. Option to Purchase | 22 |
| | | 5. Dealer's Obligations | 23 |
| X. | SUCCESSION RIGHTS UPON DEATH OR INCAPACITY | | 23 |
| | A. | SUCCESSION TO OWNERSHIP AFTER DEATH OF OWNER | 23 |
| | B. | INCAPACITY OF OWNER | 24 |
| | C. | NOMINATION OF SUCCESSOR PRIOR TO DEATH OR INCAPACITY OF OWNER | 24 |
| XI. | TERMINATION | | 25 |
| | A. | VOLUNTARY TERMINATION BY DEALER | 25 |
| | B. | TERMINATION FOR CAUSE | 25 |
| | | 1. Immediate Termination | 25 |
| | | 2. Termination Upon Sixty Days Notice | 27 |
| | | 3. Termination for Failure of Performance | 28 |
| | | 4. Termination Upon Death or Incapacity | 28 |

|  |  |  | **Page** |
|---|---|---|---|
| C. | TERMINATION UPON TERMINATION OF DISTRIBUTORSHIP | | 28 |
| D. | TERMINATION FOR FAILURE OF MBUSA TO BE LICENSED | | 28 |
| E. | TERMINATION UPON OFFERING TO ENTER INTO A NEW OR AMENDED PASSENGER CAR DEALER AGREEMENT | | 28 |
| F. | NOTICE OF TERMINATION | | 29 |
| G. | CONTINUANCE OF BUSINESS RELATIONS | | 29 |
| H. | REPURCHASE PROVISIONS | | 29 |
| | | 1. MBUSA's Obligations | 29 |
| | | 2. Dealer's Responsibilities | 30 |
| | | 3. Payment by MBUSA | 31 |
| XII. | DEFENSE AND INDEMNIFICATION | | 31 |
| | A. | DEFENSE AND INDEMNIFICATION BY MBUSA | 31 |
| | B. | DEFENSE AND INDEMNIFICATION BY DEALER | 32 |
| | C. | CONDITIONAL DEFENSE AND/OR INDEMNIFICATION | 33 |
| | D. | THE EFFECT OF SUBSEQUENT DEVELOPMENTS | 33 |
| | E. | TIME TO RESPOND AND RESPONSIBILITIES OF THE PARTIES | 33 |
| XIII. | NOTICE OF BREACH OR FAILURE TO ACT IN GOOD FAITH | | 34 |
| XIV. | GENERAL PROVISIONS | | 34 |
| | A. | NOTICES | 34 |
| | B. | NO IMPLIED WAIVERS | 34 |
| | C. | SOLE AGREEMENT OF THE PARTIES | 34 |
| | D. | DEALER NOT AN AGENT OR REPRESENTATIVE | 35 |
| | E. | ASSIGNMENT OF RIGHTS OR DELEGATIONS OF DUTIES | 35 |
| | F. | NO FRANCHISE FEE | 35 |
| | G. | BENEFIT | 35 |
| | H. | NEW JERSEY LAW | 35 |
| | I. | COMPLIANCE | 35 |
| XV. | DEFINITIONS | | 36 |
| XVI. | ADDITIONAL PROVISIONS | | 37 |

such other sales reporting requirements (i.e. reporting of sales, customer traffic, and customer order banks) as MBUSA may establish from time to time. Dealer also agrees to accurately report to MBUSA other relevant information as MBUSA may reasonably require including repair order and parts invoice data for Mercedes-Benz customers, and to furnish MBUSA with such other reports as MBUSA may reasonably require and establish from time to time.

## IX.    TRANSFERS

### A.    SALE OF ASSETS OR OWNERSHIP INTEREST

This is a personal service agreement that MBUSA has entered into in reliance upon the personal qualifications, reputation, integrity, expertise and commitment of Owners and Dealer Operator. For this reason, Dealer agrees to obtain MBUSA's prior written consent to any proposed sale or transfer of Dealer's principal assets or any ownership interest of Owner, which consent shall not be unreasonably withheld.

In deciding whether to consent to a proposed sale or transfer, and in accordance with MBUSA's then criteria for the evaluation of a proposed purchase or transfer, MBUSA will evaluate the proposed Owners' and proposed Dealer Operators' qualifications, reputation, integrity, commitment, and operational plan, including as demonstrated through the proposed Owners' and proposed Dealer Operators' prior operation or ownership of any other new motor vehicle dealerships, the proposed Owners' and proposed Dealer Operators' capital and access to financing, and the facilities that the proposed Owners' and proposed Dealer Operators' intend to utilize as Dealership Facilities, among other factors pertinent to the evaluation of the proposed sale or transfer.

MBUSA shall not be obligated to execute a new Agreement with a proposed transferee of such assets or ownership interest unless Dealer first makes arrangements acceptable to MBUSA to satisfy any outstanding indebtedness to MBUSA.

**B.**     **RIGHT OF FIRST REFUSAL OR OPTION TO PURCHASE**

Subject to Section IX.A., the parties agree as follows:

**1.**     **Rights Granted**

If a proposal to sell Dealer's principal assets used in its Dealership Operations or transfer the majority ownership interest in Dealer with respect to its Dealership Operations is submitted by Dealer to MBUSA, or in the event of the death of the majority Owner of Dealer, MBUSA has a right of first refusal or option to purchase such assets or ownership interest, including any leasehold interest or realty. MBUSA's exercise of its right or option under this Section IX.B supersedes Dealer's right to transfer its interest in, or ownership of, the dealership and may be exercised without regard to the quality of the personal qualifications, reputation, integrity, expertise or commitment of the proposed Owners and proposed Dealer Operators, or whether the proposed buyer meets any of MBUSA's then other criteria for the evaluation of a proposed purchase or transfer. MBUSA's right or option may be assigned by it to any third party and MBUSA hereby guarantees the full payment to Dealer of the purchase price by such assignee. MBUSA may disclose the terms of any pending buy/sell agreement and any other relevant dealership performance information to any potential assignee. MBUSA's rights under this Section IX.B will be binding on and enforceable against any assignee or successor in interest of Dealer or purchaser of Dealer's assets.

Anything herein to the contrary notwithstanding, MBUSA shall not have a right of first refusal or option to purchase Dealer's principal assets or the majority interest in Dealer if the proposed transferee is the spouse or a child of an Owner and such spouse or child meets the criteria then currently used by MBUSA in qualifying owners of Mercedes-Benz light truck dealers. If the proposed transferee fails to meet such criteria due to insufficient personal qualifications or expertise, MBUSA may, in its sole discretion, approve the transfer subject to the proposed transferee's successful completion of such training as MBUSA may require. If the proposed transferee fails to complete such training successfully or otherwise fails to meet the criteria then currently used by MBUSA in qualifying such owners within the time period prescribed by MBUSA, MBUSA may thereafter exercise its right of first refusal or option to purchase under this Section IX.B.

2. **Exercise of MBUSA's Rights**

MBUSA shall have sixty (60) days from the following events within which to exercise its option to purchase or right of first refusal: (i) MBUSA's receipt of all data and documentation customarily required by it to evaluate a proposed transfer of ownership; (ii) MBUSA's receipt of notice from Dealer of the death of the majority Owner of Dealer, or (iii) MBUSA's disapproval of any application submitted by Owner's heirs pursuant to Section X. MBUSA's exercise of its right of first refusal under this Section IX.B neither shall be dependent upon nor require its prior refusal to approve the proposed transfer.

3. **Right of First Refusal**

If Dealer has entered into a bona fide written buy/sell agreement for its dealership business or assets, MBUSA's right under this Section IX.B is a right of first refusal, enabling MBUSA to assume the buyer's rights and obligations under such buy/sell agreement, and to cancel this Agreement and all rights granted Dealer. Upon MBUSA's request, Dealer agrees to provide other documents relating to the proposed transfer and any other information which MBUSA deems appropriate, including, but not limited to, those reflecting other agreements or understandings between the parties to the buy/sell agreement. If Dealer refuses to provide such documentation or to state in writing that no such documents exist, it shall be conclusively presumed that the buy/sell agreement is not a bona fide agreement. If Dealer withdraws its proposal in writing within ten (10) days following Dealer's receipt of MBUSA's notice exercising its right of first refusal, such right shall be null and void.

If, as a result of MBUSA's exercise of its right of first refusal, Dealer is contractually obligated to reimburse the initial buyer for reasonable attorney's fees, broker's fees, title searches, property inspections, and other similar costs and fees that the buyer incurred in connection with the buy/sell agreement, MBUSA shall reimburse Dealer for such costs and fees incurred through the date of MBUSA's exercise of its right of first refusal in an amount up to but not exceeding Fifty Thousand Dollars ($50,000.00). Dealer shall provide MBUSA with all documents substantiating such costs and fees as MBUSA may reasonably request.

4. **Option to Purchase**

In the event of the death of the majority Owner or if Dealer submits a proposal which MBUSA determines is not bona fide or in good faith, MBUSA has the option to purchase the principal assets of Dealer utilized in Dealership Operations, including real estate and leasehold interest, and to cancel this Agreement and the rights granted Dealer hereunder. The purchase price of the dealership assets will be determined by good faith negotiations between the parties.

5.    **Dealer's Obligations**

Upon MBUSA's exercise of its right or option and tender of performance under the buy/sell agreement or upon whatever terms may be expressed in the buy/sell agreement, Dealer shall forthwith transfer the affected real property by warranty deed conveying marketable title free and clear of all liens, claims, mortgages, encumbrances, tenancies and occupancies. The warranty deed shall be in proper form for recording, and Dealer shall deliver complete possession of the property and deed at the time of closing. Dealer shall also furnish to MBUSA all copies of any easements, licenses or other documents affecting the property or Dealership Operations and shall assign any permits or licenses that are necessary or desirable for the use of or appurtenant to the property or the conduct of such operations. Dealer also agrees to execute and deliver to MBUSA instruments satisfactory to MBUSA conveying title to all personal property, including leasehold interests, involved in the transfer or sale to MBUSA. If any personal property is subject to any lien or charge of any kind, Dealer agrees to procure the discharge and satisfaction thereof prior to the closing of sale of such property to MBUSA.

## X.    SUCCESSION RIGHTS UPON DEATH OR INCAPACITY

### A.    SUCCESSION TO OWNERSHIP AFTER DEATH OF OWNER

In the event that an Owner dies and his or her interest in Dealer passes directly to any person or persons ("Heirs") who wish to succeed to Owner's interest, then Owner's legal representative must notify MBUSA within sixty (60) days of the death of Owner of such Heir's or Heirs' intent to succeed Owner. The legal representative also must then designate a proposed Dealer Operator for MBUSA's approval. The effect of such notice from Owner's legal representative will be to suspend any notice of termination provided for in Section XI.B.4 issued hereunder.

Upon delivery of such notice, Owner's legal representative shall immediately request any person(s) identified by it as intending to succeed Owner and the designated candidate for Dealer Operator to submit an application and to provide all personal and financial information that MBUSA may reasonably and customarily require in connection with its review of such applications. All requested information must be provided promptly to MBUSA and in no case later than thirty (30) days after receipt of such request from Owner's legal representative. MBUSA shall have sixty (60) days after its receipt of all requested information in which to: (i) review such application(s) pursuant to the then current criteria generally applied by MBUSA in qualifying owners and/or dealer operators of Mercedes-Benz light truck dealers, and (ii) either approve or disapprove the application(s); provided, however, that if MBUSA does not receive such application(s) and all requested information within thirty (30) days of Owner's legal representative's request therefore, MBUSA shall have no

# MERCEDES-BENZ USA, LLC

**Mercedes-Benz
Light Truck Dealer Agreement**

## Table of Contents

| | | Page |
|---|---|---|
| **DEALER AGREEMENT** | | |
| | MERCEDES-BENZ STATEMENT OF COMMITMENT | (i) |
| A. | APPOINTMENT OF DEALER | (ii) |
| B. | TERM | (ii) |
| C. | ADDITIONAL PROVISIONS | (ii) |
| D. | DEALER OWNERSHIP | (ii) |
| E. | DEALER MANAGEMENT | (iii) |
| F. | DEALERSHIP FACILITIES | (iii) |
| G. | MERCEDES-BENZ DEALER BOARD | (iv) |
| H. | MODIFICATION OF AGREEMENT | (iv) |
| I. | EXECUTION OF AGREEMENT | (iv) |
| J. | MUTUAL RELEASE | (iv) |
| K. | CERTIFICATION | (iv) |
| | FINAL PARAGRAPH | (v) |
| **STANDARD PROVISIONS** | | |
| I. | ACQUISITION, DELIVERY AND INVENTORY OF MERCEDES-BENZ LIGHT TRUCK PRODUCTS | 1 |
| A. | PRICES AND TERMS OF SALE | 1 |
| B. | AVAILABILITY AND ALLOCATION OF PRODUCTS | 1 |
| C. | DELIVERY OF PRODUCTS | 1 |
| D. | PASSAGE OF TITLE | 1 |
| E. | RISK OF DAMAGE OR LOSS | 2 |
| F. | DELAY OR FAILURE OF DELIVERY | 2 |
| G. | DIVERSION AND STORAGE CHARGES | 2 |
| H. | SECURITY INTEREST | 2 |
| 1. | Grant of Security Interest | 2 |
| 2. | Default in Payment | 3 |
| 3. | Assembly of Collateral, Payment of Costs and Notices | 3 |
| 4. | Recording and Further Assurances | 3 |
| 5. | Records and Schedules of Inventory | 3 |

such other sales reporting requirements (i.e. reporting of sales, customer traffic, and customer order banks) as MBUSA may establish from time to time. Dealer also agrees to accurately report to MBUSA other relevant information as MBUSA may reasonably require including repair order and parts invoice data for Mercedes-Benz customers, and to furnish MBUSA with such other reports as MBUSA may reasonably require and establish from time to time.

## IX. TRANSFERS

### A. SALE OF ASSETS OR OWNERSHIP INTEREST

This is a personal service agreement that MBUSA has entered into in reliance upon the personal qualifications, reputation, integrity, expertise and commitment of Owners and Dealer Operator. MBUSA has also entered into this Agreement in reliance on Dealer's agreement at all times to conduct Dealership Operations hereunder in conjunction with, and at the "Approved Location(s)" and "Dealership Facilities" for, its "Dealership Operations" under the Mercedes-Benz Passenger Car Dealer Agreement. For these reasons, Dealer agrees to obtain MBUSA's prior written consent to any proposed sale or transfer of Dealer's principal assets or any ownership interest of Owner, which consent shall not be unreasonably withheld; provided, however, that anything herein to the contrary notwithstanding, Dealer agrees that (i) it shall not sell or transfer any such assets or ownership interest relating to the conduct of Dealership Operations hereunder separate and apart from the assets or ownership interest relating to the conduct of "Dealership Operations" under the Mercedes-Benz Passenger Car Dealer Agreement, and that (ii) any such attempted sale or transfer shall be void and not binding on MBUSA.

In deciding whether to consent to a proposed sale or transfer, and in accordance with MBUSA's then criteria for the evaluation of a proposed purchase or transfer, MBUSA will evaluate the proposed Owners' and proposed Dealer Operators' qualifications, reputation, integrity, commitment, and operational plan, including as demonstrated through the proposed Owners' and proposed Dealer Operators' prior operation or ownership of any other new motor vehicle dealerships, the proposed Owners' and proposed Dealer Operators' capital and access to financing, and the facilities that the proposed Owners' and proposed Dealer Operators' intend to utilize as Dealership Facilities, among other factors pertinent to the evaluation of the proposed sale or transfer.

MBUSA shall not be obligated to execute a new Agreement with a proposed transferee of such assets or ownership interest unless Dealer first makes arrangements acceptable to MBUSA to satisfy any outstanding indebtedness to MBUSA.

B.    **RIGHT OF FIRST REFUSAL OR OPTION TO PURCHASE**

Subject to Section IX.A., the parties agree as follows:

1.    **Rights Granted**

If a proposal to sell Dealer's principal assets used in its Dealership Operations or transfer the majority ownership interest in Dealer with respect to its Dealership Operations is submitted by Dealer to MBUSA, or in the event of the death of the majority Owner of Dealer, MBUSA has a right of first refusal or option to purchase such assets or ownership interest, including any leasehold interest or realty. MBUSA's exercise of its right or option under this Section IX.B supersedes Dealer's right to transfer its interest in, or ownership of, the dealership and may be exercised without regard to the quality of the personal qualifications, reputation, integrity, expertise or commitment of the proposed Owners and proposed Dealer Operators, or whether the proposed buyer meets any of MBUSA's then other criteria for the evaluation of a proposed purchase or transfer.  MBUSA's right or option may be assigned by it to any third party and MBUSA hereby guarantees the full payment to Dealer of the purchase price by such assignee.  MBUSA may disclose the terms of any pending buy/sell agreement and any other relevant dealership performance information to any potential assignee.  MBUSA's rights under this Section IX.B will be binding on and enforceable against any assignee or successor in interest of Dealer or purchaser of Dealer's assets.

Anything herein to the contrary notwithstanding, MBUSA shall not have a right of first refusal or option to purchase Dealer's principal assets or the majority interest in Dealer if the proposed transferee is the spouse or a child of an Owner and such spouse or child meets the criteria then currently used by MBUSA in qualifying owners of Mercedes-Benz light truck dealers.  If the proposed transferee fails to meet such criteria due to insufficient personal qualifications or expertise, MBUSA may, in its sole discretion, approve the transfer subject to the proposed transferee's successful completion of such training as MBUSA may require.  If the proposed transferee fails to complete such training successfully or otherwise fails to meet the criteria then currently used by MBUSA in qualifying such owners within the time period prescribed by MBUSA, MBUSA may thereafter exercise its right of first refusal or option to purchase under this Section IX.B.

2.    **Exercise of MBUSA's Rights**

MBUSA shall have sixty (60) days from the following events within which to exercise its option to purchase or right of first refusal: (i) MBUSA's receipt of all data and documentation customarily required by it to evaluate a proposed transfer of ownership; (ii) MBUSA's receipt of notice from Dealer of the death of the majority Owner of Dealer, or (iii) MBUSA's disapproval of any application submitted by Owner's heirs pursuant to Section X. MBUSA's exercise of its right of first refusal under this Section IX.B neither shall be dependent upon nor require its prior refusal to approve the proposed transfer.

3.    **Right of First Refusal**

If Dealer has entered into a bona fide written buy/sell agreement for its dealership business or assets, MBUSA's right under this Section IX.B is a right of first refusal, enabling MBUSA to assume the buyer's rights and obligations under such buy/sell agreement, and to cancel this Agreement and all rights granted Dealer. Upon MBUSA's request, Dealer agrees to provide other documents relating to the proposed transfer and any other information which MBUSA deems appropriate, including, but not limited to, those reflecting other agreements or understandings between the parties to the buy/sell agreement. If Dealer refuses to provide such documentation or to state in writing that no such documents exist, it shall be conclusively presumed that the buy/sell agreement is not a bona fide agreement. If Dealer withdraws its proposal in writing within ten (10) days following Dealer's receipt of MBUSA's notice exercising its right of first refusal, such right shall be null and void.

If, as a result of MBUSA's exercise of its right of first refusal, Dealer is contractually obligated to reimburse the initial buyer for reasonable attorney's fees, broker's fees, title searches, property inspections, and other similar costs and fees that the buyer incurred in connection with the buy/sell agreement, MBUSA shall reimburse Dealer for such costs and fees incurred through the date of MBUSA's exercise of its right of first refusal in an amount up to but not exceeding Fifty Thousand Dollars ($50,000.00). Dealer shall provide MBUSA with all documents substantiating such costs and fees as MBUSA may reasonably request.

4.    **Option to Purchase**

In the event of the death of the majority Owner or if Dealer submits a proposal which MBUSA determines is not bona fide or in good faith, MBUSA has the option to purchase the principal assets of Dealer utilized in Dealership Operations, including real estate and leasehold interest, and to cancel this Agreement and the rights granted Dealer hereunder. The purchase price of the dealership assets will be determined by good faith negotiations between the parties.

5.   **Dealer's Obligations**

Upon MBUSA's exercise of its right or option and tender of performance under the buy/sell agreement or upon whatever terms may be expressed in the buy/sell agreement, Dealer shall forthwith transfer the affected real property by warranty deed conveying marketable title free and clear of all liens, claims, mortgages, encumbrances, tenancies and occupancies. The warranty deed shall be in proper form for recording, and Dealer shall deliver complete possession of the property and deed at the time of closing. Dealer shall also furnish to MBUSA all copies of any easements, licenses or other documents affecting the property or Dealership Operations and shall assign any permits or licenses that are necessary or desirable for the use of or appurtenant to the property or the conduct of such operations. Dealer also agrees to execute and deliver to MBUSA instruments satisfactory to MBUSA conveying title to all personal property, including leasehold interests, involved in the transfer or sale to MBUSA. If any personal property is subject to any lien or charge of any kind, Dealer agrees to procure the discharge and satisfaction thereof prior to the closing of sale of such property to MBUSA.

## X.   SUCCESSION RIGHTS UPON DEATH OR INCAPACITY

### A.   SUCCESSION TO OWNERSHIP AFTER DEATH OF OWNER

In the event that an Owner dies and his or her interest in Dealer passes directly to any person or persons ("Heirs") who wish to succeed to Owner's interest, then Owner's legal representative must notify MBUSA within sixty (60) days of the death of Owner of such Heir's or Heirs' intent to succeed Owner. The legal representative also must then designate a proposed Dealer Operator for MBUSA's approval. The effect of such notice from Owner's legal representative will be to suspend any notice of termination provided for in Section XI.B.4 issued hereunder.

Upon delivery of such notice, Owner's legal representative shall immediately request any person(s) identified by it as intending to succeed Owner and the designated candidate for Dealer Operator to submit an application and to provide all personal and financial information that MBUSA may reasonably and customarily require in connection with its review of such applications. All requested information must be provided promptly to MBUSA and in no case later than thirty (30) days after receipt of such request from Owner's legal representative. MBUSA shall have sixty (60) days after its receipt of all requested information in which to: (i) review such application(s) pursuant to the then current criteria generally applied by MBUSA in qualifying owners and/or dealer operators of Mercedes-Benz light truck dealers, and (ii) either approve or disapprove the application(s); provided, however, that if MBUSA does not receive such application(s) and all requested information within thirty (30) days of Owner's legal representative's request therefore, MBUSA shall have no

# EXHIBIT 4

# LYMAN LAW FIRM

### Attorneys at Law



**Direct Contact:**
Mark M. Lyman
Partner
(312) 762-9524

mark@lymanlawus.com
www.lymanlawus.com

April 3, 2023

Email Only
**Hannah.wilder@mbusa.com**

Hannah J. Wilder
Supervisor of Network Operations
Network Development
Mercedes-Benz USA, LLC
One Mercedes-Benz Drive
Sandy Springs, Georgia   30328

      RE:    Mercedes-Benz of Peru

Dear Ms. Wilder:

On behalf of JP Motors, Inc. ("JP Motors"), I am responding to your letter of March 28, 2023.

The Asset Purchase Agreement between JP Motors and Laspo Motors, LLC ("Laspo Motors") for the sale of its Mercedes-Benz, Chevrolet and Nissan assets does not and cannot apportion the Mercedes-Benz assets from the assets of the other brands being purchased. The purchase price was negotiated as a single unallocated amount with consideration being given to the ability to continue to operate all of the brands at the dealership premises, which arrangement was previously approved by Mercedes-Benz, Chevrolet and Nissan. By operating the dealership in this fashion, particularly in the smaller market where the dealership is located, my client and any purchaser can share certain costs and otherwise enjoy the economies of scale.

Like the Asset Purchase Agreement, the purchase price in the corresponding Real Estate Purchase and Sale Agreement is unallocated among brands and was priced based on the integrated dealership, which has operated that way for many years.

Under Illinois law, Mercedes cannot choose which terms it wishes to match and which it does not. Nor does Mercedes have a right to try to separate the seller's assets by exercising a right

---

227 West Monroe Street, Suite 2650, Chicago, Illinois 60606
Fax: (312) 704-4500

Hannah J. Wilder
Supervisor of Network Operations
Network Development
Mercedes-Benz USA, LLC
Page 2

of first refusal for less than all of the assets being sold to the single third party purchaser without violating the Illinois Motor Vehicle Franchise Act.  Notably, the other manufacturers involved in this sale have accepted the parties' position and not requested any allocation.

Accordingly, we ask that Mercedes move forward with Laspo Motors' application and the expected approval.

If you have any questions, please do not hesitate to contact me or have your counsel contact me.

Very truly yours,

Mark M. Lyman

Mark M. Lyman

cc        Joseph Leydon (via email)
          John Crane (via email)
          Ira M. Levin (via email)

# EXHIBIT 2

**STATE OF ILLINOIS**
**MOTOR VEHICLE REVIEW BOARD**

JP MOTORS, INC.,

               Complainant,                      MVRB No. 339-23

        v.

MERCEDES-BENZ USA, LLC,                Hearing Officer Mark Kuchler, Esq.

               Respondent.

**COMPLAINANT'S AMENDED PROTEST (FACTS SUPPORTING VIOLATION)[1]**

Complainant, JP Motors, Inc. ("JP Motors"), is a duly licensed motor vehicle dealer in Peru, Illinois, and owns and operates Mercedes-Benz, Chevrolet and Nissan ("Dealership Franchises") dealerships in a single dealership facility located at 3675-3701 Frontage Road, Peru, Illinois 61354 ("Dealership Facility"). Pictures of the Dealership Facility are attached as **Group Exhibit 1**. The Dealership Facility was constructed more than 40 years ago as a multi-franchise dealership. All of the Dealership Franchises have been operating at the Dealership Facility for approximately 31 years. JP Motors (and its predecessor entity) has been the Mercedes-Benz, USA, LLC ("MBUSA") dealer at the Dealership Facility for ~~approximately~~over 25 years ~~and currently operates pursuant to~~.

JP Motors last entered into a written Mercedes-Benz Passenger Car Dealer Agreement and a Mercedes-Benz Light Truck Dealer Agreement~~, each dated January 1,~~ in 2012 ("MB Dealer Agreements"). The MB Dealer Agreements expired by their terms in or about the end of 2012. Since that time, JP Motors has not entered into a new written agreement with MBUSA. JP

---

[1] This document amends the Facts Supporting Violation attached to Complainant's original April 14, 2023 Notice of Protest filed in this cause.

1

Motors currently operates its dealership pursuant to an arrangement with MBUSA to purchase, sell and service MBUSA vehicles and perform warranty work from the Dealership Facility. Under the Illinois Motor Vehicle Franchise Act, a "franchise" is any "oral or written arrangement for a definite or indefinite period in which a manufacturer, distributor or wholesaler grants to a motor vehicle dealer a license to use a trade name, service mark, or related characteristic, and in which there is a community of interest in the marketing of motor vehicles or services related thereto at wholesale, retail, leasing or otherwise." 815 ILCS 710/2(i).

While there are some separate retail entrances and other interior separations, much of the dealership facilities are contiguous, open and shared by the various Dealership Franchises. Further, service technicians work on different vehicle brands and the service area, parts storage area and offices are shared and intertwined. Dealer personnel, including retail and support staff, are shared or have duties that serve all of the Dealership Franchises permitting the dealer to share expenses at a significant savings, which would be lost if the Dealership Franchises were operated independently.

The dealerships being operated at the Dealership Facility are known in the industry as a "dual" facility since they contain more than one line-make. Dual facilities are particularly suitable for downstate markets, like Peru, where demand and volume for a particular brand may not support a single, exclusive dealership facility. JP Motors does not have an agreement with any of the manufacturers to operate its Dealership Franchises in separate facilities or to keep the Dealership Facility exclusive to any specific line-make.

On February 1, 2023, JP Motors entered into an Asset Purchase Agreement ("APA") with Laspo Motors, LLC, an Illinois limited liability company ("Buyer"), to acquire its Mercedes-Benz, Chevrolet, and Nissan assets at the Dealership Facility. Commencing on

February 15, 2023 and continuing to the present, Buyer submitted to MBUSA, which MBUSA accepted, information and documentation requested and required by it to process Buyer's dealer application. The APA provided a single purchase price for all of the Dealership Franchises. The APA also requires the Buyer to purchase the Dealership Facility pursuant to a Real Estate Purchase and Sale Agreement with one unallocated purchase price.

On February 1, 2023, the APA was submitted to MBUSA for approval. On February 8, 2023 and again on March 28, 2023, MBUSA sent letters requesting an allocation of the purchase price under the APA related to JP Motors' Mercedes-Benz franchise so that MBUSA could evaluate whether to exercise its right of first refusal. **Group Exhibit 2**. MBUSA claimed that such an allocation was required by Section IX.B. of the MB Dealer Agreements; however, MBUSA did not mention that the MB Dealer Agreements had since expired. HoweverRegardless, even if they were not expired, Section IX.B. of the MB Dealer Agreements does not address or require the allocation of purchase prices or goodwill in an asset purchase agreement. **Exhibit 3,** at Section IX.B. On April 3, 2023, counsel for JP Motors responded to MBUSA's request for an allocation noting that the APA purchase price was negotiated as a single unallocated amount with consideration being given to the ability to continue to operate all of the brands at the Dealership Facility. It was noted that the Dealership Franchises and the Dealership Facility were being purchased together, as a single going concern, and not separately so that the purchaser could share certain costs and enjoy the economies of scale. **Exhibit 4**.

MBUSA is the *only* manufacturer of the three line-makes to insist that an allocation of the purchase price in the APA be made. MBUSA's refusal to proceed with the approval process of the Buyer's application has delayed the transaction and resulted in losses and damages to JP Motors.

In response to JP Motors' letter advising that an allocation of the APA purchase price was not required or possible given the nature of the transaction, MBUSA, with the clear attempt to avoid the Illinois Motor Vehicle Review Board ("Board") deciding this dispute under the IMVFA (defined below) and to halt processing Buyer's application any further, filed an action in the United States District Court for the Eastern District of Illinois (*Mercedes–Benz USA v. JP Motors, Inc.*, Case No. 1:23-cv-02281) alleging that JP Motors had materially breached the MB Dealer Agreements and violated the IMVFA by not allocating the purchase price in the APA. (Complaint was filed under seal). ~~This~~

Ultimately, this dispute involves the interpretation and application of a statute, the IMVFA (defined below), that is squarely within this Board's jurisdiction, and should be determined by the Board in the first instance. *See Nissan North America, Inc. v. Jim M'Lady Oldsmobile, Inc.,* No. 07 C 6304, 2008 U.S. Dist. LEXIS 84700, at *9 (N.D. Ill. Aug. 29, 2008) (applying *Burford* abstention to federal action that involved the same issue as action pending before the MVRB); *see also Lou Bachrodt Chevrolet Co. v. GM LLC*, No. 12 C 7998, 2013 U.S. Dist. LEXIS 98870, at *15 (N.D. Ill. July 15, 2013) (remanding action to the MVRB after holding that state interest in interpretation of IMVFA "substantially outweighed" federal interest in diversity jurisdiction). The federal court has since dismissed MBUSA's complaint under the doctrine of abstention in deference to these proceedings before the Illinois Motor Vehicle Review Board.

## APPLICABLE STATUTES

JP Motors is an Illinois motor vehicle dealer. MBUSA is an Illinois franchiser. JP Motors is a franchise subject to the Illinois Motor Vehicle Franchise Act ("IMVFA").

Section 4 of the IMVFA prohibits certain unfair practices by motor vehicle franchisers.

Among them, **Section 4(e)(6) of the IMVFA** makes it unlawful for a manufacturer:

> to refuse to give effect to or prevent or attempt to prevent by contract or otherwise any motor vehicle dealer or any officer, partner or stockholder of any motor vehicle dealer from selling or transferring any part of the interest of any of them to any other person or persons or party or parties unless such sale or transfer is to a transferee who would not otherwise qualify for a new motor vehicle dealers license under the Illinois Vehicle Code[2] or unless the franchiser, having the burden of proof, proves that such sale or transfer is to a person or party who is not of good moral character or does not meet the franchiser's existing and reasonable capital standards and, with consideration given to the volume of sales and service of the dealership, uniformly applied minimum business experience standards in the market area.

**Section 4(e)(11) of the IMVFA** makes it unlawful for a manufacturer:

> to prevent or refuse to approve a proposal to establish a successor franchise at a location previously approved by the franchiser when submitted with the voluntary termination by the existing franchisee unless the successor franchisee would not otherwise qualify for a new motor vehicle dealer's license under the Illinois Vehicle Code or unless the franchiser, having the burden of proof, proves that such proposed successor is not of good moral character or does not meet the franchiser's existing and reasonable capital standards and, with consideration given to the volume of sales and service of the dealership, uniformly applied minimum business experience standards in the market area.

**Section 4(e)(14) of the IMVFA** makes it unlawful for a manufacturer:

> (14) to exercise a right of first refusal or other right to acquire a franchise from a dealer, unless the manufacturer. . . :

> > (B) pays to the dealer the same or greater consideration as the dealer has contracted to receive in connection with the proposed transfer or sale of all or substantially all of the dealership assets, stock, or other ownership interest, including the purchase or lease of all real property, leasehold, or improvements related to the transfer or sale of the dealership. Upon exercise of the right of first refusal or such other right, the manufacturer or distributor shall have the right to assign the lease or to convey the real property;

> > (C) assumes all of the duties, obligations, and liabilities contained in the agreements that were to be assumed by the proposed transferee and with respect to which the manufacturer or distributor exercised the right of first refusal or other right to acquire the franchise;

5

**Section 7 of the IMVFA** makes it unlawful for a manufacturer:

> directly or indirectly to impose unreasonable restrictions on the motor vehicle dealer or franchisee relative to transfer, sale, right to renew, termination, discipline, noncompetition covenants, site-control (whether by sublease, collateral pledge of lease, or otherwise), right of first refusal to purchase, option to purchase, compliance with subjective standards and assertion of legal or equitable rights.

Finally, **Section 4(b) of the IMVFA** provides:

> It shall be deemed a violation for any manufacturer, factory branch, factory representative, distributor or wholesaler, distributor branch, distributor representative or motor vehicle dealer to engage in any action with respect to a franchise which is arbitrary, in bad faith or unconscionable and which causes damage to any of the parties or to the public.

## <u>STATUTORY VIOLATIONS</u>

Under Section 4(e)(14) and the other above-cited provisions of the IMVFA, a motor vehicle manufacturer's right of first refusal is not absolute.  In fact, it violates Illinois law *unless* the manufacturer is in a position to step into the shoes of the purchaser and take the entire deal as it comes to the manufacturer, including all of the buyer's other obligations under the APA and the related real estate.  If the manufacturer cannot do so, then it cannot exercise a lawful right of first refusal over the franchised assets, regardless of what the franchise agreement states.  The IMVFA is just as applicable to rights of first refusals as it is to any other issue covered by the written franchise agreement, including terminations, relocations, dealer successions, and warranty procedures.  All of these matters are subject to the IMVFA, which the Illinois General Assembly intended to protect Illinois dealers from harmful franchising practices, such as those here.

MBUSA's refusal to proceed with processing the Buyer's dealer application and MBUSA's insistence that the parties rewrite their agreement (i.e., allocate the purchase price) to facilitate a purported right of first refusal, violates the IMVFA in several respects.  MBUSA's

6

actions, if validly exercised, would effectively undual JP Motor's dealership, which has operated in its present form and location for decades, devalue its other dealership assets, jeopardize the sale to the Buyer, and threaten the viability of JP Motors' remaining dealership operations, its investment in its facility, and the jobs of its employees.

*First,* MBUSA's refusal to continue to process the Buyer's dealer application, which is delaying the sale of JP Motor's franchises, is done without good cause and violates Section 4(e)(6), or alternatively, Section 4(e)(11).  It also constitutes an unreasonable restriction relative to the sale of JP Motors' dealership in violation of Section 7.

~~*Second*~~

*Second*, MBUSA is attempting to assert a contractual right of first refusal that it does not even have with JP Motors, because any such right appeared in a written agreement that has since expired. Since that expiration, the course of dealing and arrangement between MBUSA and JP Motors to operate as a franchised MBUSA motor vehicle dealer, which is protected by other sections of the IMVFA, does not include or give MBUSA a right of first refusal over JP Motor's dealership.

*Third,* MBUSA's demand that the parties allocate the purchase price, which is apparently tied to a premise that MBUSA could exercise a right of first refusal for less than all of the assets that JP Motors is selling to Buyer, violates Section 4(e)(14), which contains no requirement that a purchase price be allocated, much less that a manufacturer could refuse to accept the transaction as presented, or exercise a right of first refusal for less than all of the assets being conveyed.  Such a requirement also constitutes an unreasonable restriction relative to JP Motors' right to sell its dealership in violation of Section 7.

*Third*, even*Fourth*even assuming, arguendo, that MBUSA has a right of first refusal under the MB Dealer Agreements for these transactions, there is nothing therein that requires JP Motors to allocate a purchase price or otherwise alter the agreement that JP Motors entered into with the Buyer. Thus, putting aside how Section 4(e)(14) limits MBUSA's contractual rights, MBUSA is actually attempting to assert contractual rights that it does not have, resulting in harm and damages to JP Motors. MBUSA's violations of the IMVFA by asserting contract rights that it does not have under the MB Dealer Agreements and taking steps to try to frustrate the transactions in the APA are egregious, done in bad faith, and violates Section 4(b).

Accordingly, JP Motors, Inc. requests a hearing on its protest, a declaration that Mercedes-Benz USA, LLC has violated Sections 4(e)(6), 4(e)(11), 4(e)(14), 7 and 4(b) of the IMVFA, and an order requiring Mercedes-Benz USA, LLC to approve the sale from JP Motors to the Buyer. In addition, pursuant to Section 13 of the IMVFA, Complainant seeks an award of its attorneys' fees, experts' fees, and costs. 815 ILCS 710/13.

Dated: December 29, 2023 _____ Respectfully submitted,

JP MOTORS, INC.

By: _____*/s/Ira M. Levin*_____
One of Its Attorneys

Mark M. Lyman
Steve M. Varhola
Lyman Law Firm, LLC
227 West Monroe Street, Suite 2650
Chicago, Illinois 60606
mark@lymanlawus.com
steve@lymanlawus.com

*and*

Ira M. Levin (ilevin@burkelaw.com)
Eric P. VanderPloeg (evanderploeg@burkelaw.com)
Chase E. Bullock (cbullock@burkelaw.com)

8

BURKE, WARREN, MACKAY & SERRITELLA, P.C.
330 North Wabash Avenue, 21st Floor
Chicago, Illinois 60611-3607
Telephone:     (312) 840-7000
Facsimile:     (312) 840-7900